MARGARET A. HUMBLE

*v.*

SARAH A. CURTIS *et al.*

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

| | |
|---|---|
| 160 | 193 |
| 65a | 98 |
| 160 | 193 |
| 166 | 496 |
| 160 | 193 |
| 170 | 368 |
| 160 | 193 |
| 78a | 186 |
| 160 | 193 |
| 80a | 298 |
| 160 | 193 |
| 179 | 606 |
| 160 | 193 |
| 100a | ³226 |
| 100a | ³228 |
| 160 | 193 |
| 108a | ³223 |

1. VENDOR AND PURCHASER—*when innocent purchaser of lands is protected.* One who has exchanged lands for mining stock cannot recover the lands as against innocent persons who have acquired rights in the property, although defrauded in the exchange.

2. BILLS AND NOTES—*innocent purchaser of, protected.* A purchaser of a note is not deprived of the right to protection as a *bona fide* holder by the fact that it is secured by mortgage or deed of trust.

3. MORTGAGES—*innocent purchaser of note secured by—equities of third persons.* A purchaser, in good faith, of a negotiable note secured by mortgage does not take the mortgage subject to equities existing in favor of third persons, even if it is taken subject to the equitable defenses existing in favor of the mortgagor.

*Curtis v. Humble,* 57 Ill. App. 513, affirmed..

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. MCCONNELL, Judge, presiding.

On the 25th day of September, 1885, appellant, Margaret A. Humble, instituted a suit in equity in the circuit court of Cook county. In the bill she alleges, among other things, that by fraud and imposition practiced on her by one James M. Allen and H. H. Armstead she was induced to convey two lots to said Allen in payment for stock in the Frisco Consolidated Mining Company, sold to her by the company for the agreed price of $2500, which stock, it is averred, was wholly worthless. The lots are fully described in the bill, but they are referred to in the argument as lots 37 and 38. Complainant's conveyance to Allen was made on December 8, 1883. On September 15, 1884, it is averred Allen and wife and H. H. Armstead and wife joined in a conveyance of the lots to one J. B. Armstead, who executed two trust deeds, one conveying

lot 38 (being the one here in question) and the other the adjoining lot 37, each running to one Fay, and given to secure a principal note of $1500 on each lot. Each of said principal notes bears date September 1, 1884, and is payable five years thereafter, with interest according to the tenor of coupons annexed, to said J. B. Armstead's own order, and by him indorsed. It is further alleged that on July 25, 1885, J. B. Armstead conveyed lot 37 to Hattie J. Harvey, and on the same day lot 38 to Ida G. Williams, each conveyance being subject to the trust deed on the lot embraced therein, which the said grantees respectively assumed and agreed to pay. The bill also charges that J. B. Armstead, brother of H. H. Armstead, was a man of no pecuniary means; that he took title to the property in question without consideration, and with full knowledge on his part of complainant's equities; that in encumbering and disposing of said property he was acting as the mere tool and agent of his brother, for the purpose of placing the property beyond the reach of complainant; that H. H. Armstead and Allen are the holders and owners of the notes aforesaid, executed by said J. B. Armstead and secured by said trust deeds to Fay; that they were the actual vendors in interest of said lots; that said notes are still wholly unpaid, and that complainant is entitled to the proceeds of said sale to the extent of $2500,—the value of her lots at the time of their conveyance to Allen; that she had tendered the stock to the company and demanded a re-conveyance of said real estate, which had been refused. The bill makes James M. Allen, H. H. Armstead, J. B. Armstead, J. Edwards Fay and Albert E. Story, (successor in trust,) the Frisco Consolidated Mining Company, Hattie J. Harvey and Ida G. Williams defendants. The prayer is for an accounting between complainant and all of the defendants; that Armstead and Allen be enjoined from negotiating or putting the notes out of their possession; that Harvey and Williams be restrained and enjoined from

paying the indebtedness assumed by them; that the contract entered into between complainant and the company be annulled; that the court decree to complainant an interest and claim in each of said lots to the extent of $1250, according to the tenor of the notes assumed and agreed to be paid by said Harvey and Williams, and for general relief.

All of the defendants to Mrs. Humble's bill made default except Harvey and Williams, who answered, denying all knowledge of the fraud perpetrated on appellant and also as to the other matters alleged in the bill, except as to the conveyances to them, the execution of which they admit. They allege that they were *bona fide* purchasers of the property in question, subject to the trust deeds mentioned in the bill, which they admit were assumed by them respectively, as therein set forth.

The cause having been referred to the master in chancery, a large quantity of evidence was taken, but before a hearing was had, Sarah A. Curtis, one of the appellees herein, on January 20, 1888, filed a bill in the Superior Court of Cook county to foreclose the trust deed executed by J. B. Armstead on lot 38, and another suit was brought in the same court by Sarah W. Almy to foreclose the other trust deed on lot 37. After the filing of these bills, Ida G. Williams, who had purchased the lot described in the trust deed sought to be foreclosed, filed on July 2, 1889, in the suit brought by Mrs. Humble, a cross-bill in the nature of a bill of interpleader. In that cross-bill Mrs. Williams set up the bringing of the two suits described, one by Mrs. Humble and the other by Miss Curtis, and asked that she might be permitted to pay into court the money due on the note held by Miss Curtis and on the other notes, and that Mrs. Humble and Miss Curtis, and the unknown holders of the other notes, be ordered to interplead and have their claims to that fund determined. Thereupon an order was entered on July 18, 1889, directing Mrs. Williams to pay the money into

court and enjoining Miss Curtis from further prosecuting any action to collect her note. Mrs. Harvey, the purchaser of the other lot, also filed in the suit brought by Mrs. Humble a cross-bill, similar to the one filed by Mrs. Williams, and a similar order was entered, directing Mrs. Harvey to pay into court the money due upon the note secured by deed of trust on her lot.

The cross-bills of Williams and Harvey were treated as bills of interpleader. Mrs. Humble answered both bills, setting up substantially the same matter set up in her original bill. The answers of Mrs. Almy and Miss Curtis set up that they were purchasers in good faith and for value, without any notice of the pretended claim of Mrs. Humble or of the alleged fraud upon which her pretended claim was based. Upon the issues thus formed a hearing was had, resulting in a decree in favor of Mrs. Humble, the complainant, for $750 in each case. To reverse this decree Sarah A. Curtis appealed to the Appellate Court, where the decree was reversed and a judgment entered directing the money in court be paid Sarah A. Curtis, and that the original bill of Margaret A. Humble be dismissed.

MONK & ELLIOTT, and SMOOT & EYER, for appellant:

Clear proof of payment is vital to uphold a transfer in other respects surrounded with suspicion; and this requirement is not met by the mere proof of payment, without any attempt to show where the money came from, whose it was, how it was obtained or what was done with it. *Harrell* v. *Mitchell*, 61 Ala. 270.

The evident willingness of appellees to rest their whole proof upon this point, on the uncorroborated testimony of the principal actor in the fraud, is open to but one explanation. *Tracy* v. *Phelps*, 22 Fed. Rep. 634; *Hunt* v. *Blodgett*, 17 Ill. 583; *Draper* v. *Draper*, 68 id. 117; *Harrell* v. *Mitchell*, 61 Ala. 270; *Henderson* v. *Henderson*, 55 Mo. 534; *Goshhorn* v. *Snodgrass*, 17 W. Va. 717.

A purchaser without notice takes the title divested of the trust, which then attaches to the purchase money instead of the property. *Brown* v. *Lynch*, 1 Paige's Ch. 147; *Huxley* v. *Rice*, 40 Mich. 73; *Whittemore* v. *Cowell*, 7 Allen, 446; *Ruthford* v. *Williams*, 44 Mo. 18; *Cheeney* v. *Gleason*, 117 Mass. 557.

It is not in all cases indispensable to the right to rescind, that the party aggrieved shall be able to place the other party wholly *in statu quo*. The court may proceed to do so as nearly as possible, and make compensation for the residue. *Savery* v. *Kings*, 5 H. L. Cas. 627; *Warner* v. *Daniels*, 1 W. & M. 90; *Crossing* v. *Hall*, 33 N. J. Eq. 111.

An act of fraud can never constitute the foundation to relief in equity, or give the wrongdoer any advantage as a defense. *McCloskey* v. *Gordon*, 26 Miss. 260; ·*King* v. *Ordway*, 73 Iowa, 735.

The substitution of a third person as grantee, instead of the purchaser, will not vary the rights of the grantor. The right to reclaim the property itself, or to enforce a grantor's lien against it, followed it into the hands of Allen and his sub-grantee with notice. *Torrey* v. *Buck*, 2 N. J. Eq. 366; *Crampton* v. *Prince*, 83 Ala. 246; *Beal* v. *Harrington*, 116 Ill. 113.

The assignee of a mortgage takes subject to the equities between the owner of the equity of redemption and the mortgagee, whether such owner is the mortgagor or not, who can defend against the mortgage whenever he could defend against his own non-negotiable promise. *Smith* v. *Newton*, 38 Ill. 230; *Hartley* v. *Tatham*, 1 Keyes, 222; *Sumner* v. *Waugh*, 56 Ill. 531.

Assignments or transfers of the subject matter, pending suit, are not permitted to vary or affect the rights of parties, the pendency of the suit being notice to the purchaser so as to bind his interests by the decree. *Norris* v. *Ile*, 152 Ill. 190.

The doctrine of *lis pendens* applies to securities non-negotiable in their nature, such as trust deeds, and under-

taking of sub-grantee to pay the same. *Hall* v. *Jack*, 32 Md. 253; Freeman on Judgments, sec. 194; *Scudder* v. *Vanamberg*, 4 Edw. Ch. 29; *Watlington* v. *Howley*, 1 Desaus. 167; *Thomas* v. *Southard*, 2 Dana, 480; *Diamond* v. *Lawrence*, 37 Pa. St. 353; *Murray* v. *Lylburn*, 2 John's Ch. 441.

MORAN, KRAUS & MAYER, for appellees:

The authorities are uniform in this country, with the exception of a few Pennsylvania cases, that the doctrine of *lis pendens* does not apply to negotiable paper before due. Bennett on Lis Pendens, secs. 172, 267; 1 Daniel on Neg. Inst. (3d ed.) sec. 800*a*; Wade on Notice, secs. 360, 368; 2 Black on Judgments, sec. 500; Freeman on Judgments, sec. 194; 2 Devlin on Deeds, sec. 792; 1 Bigelow on Fraud, 397; *Leitch* v. *Wells*, 48 N. Y. 613; *Mims* v. *West*, 38 Ga. 18; *In re Great Western Tel. Co.* 5 Bliss, 363; *Enfield* v. *Jordan*, 119 U. S. 680; *Pana* v. *Bowler*, 107 id. 545.

Where the holder of property is not made a party defendant to an action, such action is not *lis pendens* against a purchaser from him, although it would have been had the holder been made a party. *Scarlett* v. *Gorham*, 28 Ill. 319; *Dovey's Appeal*, 97 Pa. St. 153; Wade on Notice, sec. 368; Bennett on Lis Pendens, sec. 97.

Mrs. Humble, if she can rescind, should have offered to put the company or Armstead, or those alleged to stand in their shoes, *in statu quo*, by repayment of the $500 and interest thereon. The interest should then be computed from the time the Humbles received the $500. *Richards* v. *Todd*, 127 Mass. 167; *Warren* v. *Tyler*, 81 Ill. 15.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

The argument in this case has taken a wide range, and many things have been discussed in the argument which, in the view we take of the case, it will not be necessary to consider. We shall not, therefore, undertake to follow counsel in their argument and consider all the questions raised and discussed.

Ida G. Williams, who purchased lot 38 and assumed the payment of a deed of trust on the lot given to secure a principal note of $1500 which had been executed by J. B. Armstead, under decree of court paid the amount of the note into court, and the question involved in this case is, whether this money belongs to Sarah A. Curtis, the purchaser of the note and deed of trust, or whether the fund can be reached by the complainant in the bill, Margaret A. Humble, to satisfy an alleged claim she holds against the Frisco Consolidated Mining Company, James M. Allen and H. H. Armstead, arising from a fraudulent sale of mining stock for the two lots, Nos. 37 and 38, which she traded for certain shares of stock in said company.

Whether there was such fraud in the exchange of the stock for the lots as would authorize the complainant to rescind the sale and recover her property is a question we shall not stop to consider. Conceding that complainant was defrauded in the exchange of her lots for mining stock, she cannot recover them as against innocent persons who have acquired rights in the property. It is conceded that Ida G. Williams purchased the lot in good faith, without notice that complainant had any rights of any character in the property, and, so far as she is concerned, she is entitled to hold the property. But when Mrs. Williams purchased there was an outstanding note for $1500, executed by J. B. Armstead, secured by a mortgage or deed of trust on the lot, which she, as a part of the purchase money, assumed and agreed to pay, and appellee Sarah E. Curtis claims to be an innocent holder, having acquired the note before maturity, for full value.

As has been seen, the two lots were conveyed to James B. Armstead on September 1, 1884, and upon receiving the title Armstead executed a trust deed on each of the lots to J. E. Fay, trustee, to secure a note of $1500. The two notes were signed by Armstead, and payable to bearer in five years from date. On the 25th day of July,

1885, James B. Armstead conveyed lot 37 to Hattie J. Harvey, and she, as a part of the purchase money, assumed and agreed to pay the $1500 deed of trust which Armstead had previously placed on the lot. On the same day he sold lot 38 to Ida G. Williams, and she assumed and agreed to pay the note secured by deed of trust on the property. H. H. Armstead testified that in April or May, 1885, he sold these two notes secured by the deed of trust to James R. McPherson, who held them until October 29, 1885, when he sold them to Miles Almy for $2905 and broker's commission. The latter testified as follows: "I am in the real estate and loan business, and was in the same business in 1885. I know Mrs. Almy and Miss Curtis, parties to this suit. I bought the notes and trust deed signed by James B. Armstead and introduced here in evidence. This book is my check-book, and shows the checks I made out during 1884 and 1885. Mr. Payne was the broker who brought these papers to me from Mr. Gardner. Mr. Payne offered the papers to Mr. Gardner, who roomed in the same office with me. Mr. Gardner turned the matter over to me, and I bought the papers through Mr. Payne. I examined the property and made up my mind what I would give for the paper, and told Mr. Payne. He brought the abstract and I examined it. The next day Payne came in with Mr. Armstead, and I told him what I would give for the paper, and Mr. Payne said that they would have to go and get the paper. Mr. H. H. Armstead said he didn't own the papers, and they went off together to get them. They came back with the mortgages and notes. I gave them a check. Mr. Armstead said J. R. McPherson owned the papers. He said so when I asked to whom the check should be made. He answered, 'To the owner—J. R. McPherson.' I made a check for $2905,—the net amount,— October 29, 1885. I made out a check at the same time for Payne for $22.50 and another to Gardner for $22.50, for commissions. The stub shows the check was made out

to the order of J. R. McPherson. The check came back canceled from the bank." The witness also testified that the abstract showed nothing in regard to any litigation concerning the notes; that neither Mrs. Almy nor Miss Curtis knew of the purchase until after it was made; that the notes were bought with their money.

It will be remembered that the bill of the complainant was not filed until September 25, 1885, and neither J. R. McPherson, Sarah A. Curtis nor Mrs. Almy was made a party to the bill. Now, it is a plain proposition that if McPherson purchased the notes in April or May, 1885, as testified to by H. H. Armstead, he would be a *bona fide* holder, and would not be affected by the frauds perpetrated upon the complainant by Allen and Armstead, and if he was a *bona fide* holder, the purchase of Miss Curtis and Mrs. Almy before the notes were due, for full value, would entitle them to protection as innocent purchasers of commercial paper before maturity. It may be that H. H. Armstead testified falsely in regard to the sale of the notes to McPherson, but we find no sufficient evidence in the record to impeach his testimony. The alleged want of means on the part of McPherson, and the fact that he was engaged in taking care of Armstead's horses about the time the purchase was alleged to have been made, cannot be regarded as sufficient to overcome the positive evidence of Armstead in reference to the sale of the notes. Moreover, the evidence of Armstead in regard to the sale seems to be corroborated by the fact that five or six months after the alleged sale the notes were found in McPherson's possession, and he, through his agents, sold them to Almy. The fact that McPherson was the holder of the notes in October, 1885, raises the presumption that he was a *bona fide* holder. (*Matson* v. *Alley*, 141 Ill. 284.) Miles Almy testified that on October 29, 1885, he purchased the notes from J. R. McPherson, and made out a check in his name in payment for

them.   This evidence is not contradicted by the evidence of any other witness.

The fact that the note which Sarah A. Curtis purchased was secured by deed of trust did not deprive her of the right to protection as an innocent purchaser. Upon the purchase of the note before maturity the mortgage or deed of trust given to secure the note passed to her as an incident of the debt, and upon a failure to pay the note she would be entitled to foreclose the mortgage. It may be true that she took the mortgage subject to the equitable defenses, if any, existing in favor of the mortgagor; but it cannot be held that she took the mortgage subject to equities existing in favor of third parties.

In *Himrod* v. *Gilman*, 147 Ill. 293, in the consideration of a similar question, it is said (p. 301): "That he (the assignee) would take the mortgage subject to the equitable defenses existing in favor of the mortgagor is settled in *Olds* v. *Cummings*, 31 Ill. 188, and numerous other cases. The reason there given is, that it is the duty of the purchaser of a mortgage, it not being assignable so as to vest the legal interest, to inquire of the mortgagor if there be any reason why it should not be paid.   But we there said: 'He should not be required to inquire of the whole world to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage, as, for instance, a *cestui que trust*,'—citing *Murray* v. *Lylburn*, 2 Johns. Ch. 441; *Mott* v. *Clark*, 9 Pa. St. 399 ; *Prior* v. *Wood*, 31 id. 142.   In the first of these cases it is said by Chancellor Kent:   'It is a general and well settled principle that the assignee of a chose in action takes it subject to the same equities it was subject to in the hands of the assignor.   But this rule is generally understood to mean the equity residing in the original obligor, and not an equity residing in some third person against the assignor.'   *   *   *   The question involved came directly before this court in *Silverman* v. *Bullock*, 98 Ill. 11, and upon authority of the cases before mentioned

it was held 'that the assignee of a mortgage takes it subject only to the equities existing in favor of the mortgagor, as against the assignor, and not subject to latent equities in favor of third persons in the subject involved in the assignment, of which he had no notice.'"

We do not think appellant was entitled to relief against appellee Sarah A. Curtis, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*