## Electa W. Yarnell et al. v. Lephia O. Brown.

65   83
170s 362

1. DECREES—*Power to Amend After the Term—Bill of Review.*—It is a well settled rule of practice that, generally, the court can not set aside a decree rendered at a former term for mere error of law; the proper course is by bill of review.

2. SAME—*Requisites of.*—A mere copy of the judge's minutes may serve as a memorandum from which counsel can prepare a decree, but such minutes are not, in any proper sense, a decree in the case.

3. SAME—*Where Amendments are Proper After the Term.*—Where there is no decree beyond a mere finding that the bill was confessed and a certain amount due to the complainant, the decree is in an unfinished and incomplete condition, and the court has jurisdiction, at a subsequent term, to amend, alter or wholly set it aside.

4. ASSIGNMENT—*Of Choses in Action—Rights of Assignee.*—A judgment being a chose in action, can not be transferred so as to vest the legal interest in the assignee. A beneficial interest only passes, and the assignee takes the judgment subject to all equities between the original parties.

5. SAME—*Of Choses in Action—Assignee Not Subject to Equities of Third Persons.*—The assignee of a chose in action takes it subject to the equities of the original debtor, but he is not affected by the equities of third persons, especially those called latent equities.

6. SAME—*Judgments and Mortgages, on the Same Footing.*—Judgments and mortgages stand upon the same footing in regard to the rights of assignees. Each is a mere chose in action not negotiable at law, and as to each, the interest of the assignee is merely equitable, and enforceable as such.

**Bill to Correct Mistake in Description of Mortgaged Premises.** —Appeal from the Circuit Court of Christian County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1895. Reversed and remanded with directions. Opinion filed May 16, 1896.

W. L. GROSS, attorney for appellants, contended that the decree of March 30, 1891, finding the amount due the appellee, and ordering the sale of the premises described in the mortgage and bill, was a final decree, conclusively settling and determining the rights of the parties as to all matters involved in the proceeding; in respect thereto, they were *res judicata.*

It is none the less final because subsequent proceedings are necessary to execute it as a decree for the sale of mortgaged property. Freeman on Judgments, Sec. 27; Bronson v. Railroad Co., 2 Black, 521; Ray v. Law, 3 Cranch, 179; Whiting v. Bank (U. S.), 13 Wheat. 15.

And this, on the ground that where a mortgage is foreclosed and sale ordered, the merits of the controversy are finally settled. Kirby v. Runals, 140 Ill. 295.

The amplified paper decree, being in conformity to the minutes of the judge and the record made by the clerk, took effect from the time of filing. Russell v. Sargeant, 7 Brad. 98.

And when so filed, the matters therein involved became *res judicata.* Hugh v. Washington, 65 Ill. 245.

The judge is not required to sign his name to the decree. Dunning v. Dunning, 37 Ill. 316.

Having entered a final decree, and adjourned for the term, the court lost jurisdiction of the cause, save only the power to rectify defects or imperfections in matter of form, and in affirmance of the judgment. Statute, Amendments and Jeofails, Sec. 2; Hugh v. Goodrich, 59 Ill. 459; Lilly v. Shaw, 59 Ill. 72; State Savings v. Nelson, 49 Ill. 171; Fielding v. People, 128 Ill. 595.

The settled rule of decision is, that courts can not, at a subsequent term, set aside judgments and decrees, or amend them, except in form, and then only upon notice. Ayer v. Chicago, 149 Ill. 262; Ives v. Hulce, 17 Ill. App. 30.

It has no power, at a subsequent term, to make an order dismissing a suit which will have the effect to set aside a final decree of foreclosure. And sale may be made notwithstanding such order. Kirby v. Runals, 140 Ill. 289.

During the term it controls the record, and may amend its judgments or decrees or set them aside. But after the term, when rendered, it is without the power to substantially amend or set them aside. Becker v. Sauter, 89 Ill. 569.

After term, the same court has no supervisory power over its adjudications, except to amend them in mere matter of form. Cook v. Wood, 24 Ill. 295; Lill v. Stookey, 72 Ill. 495.

Neither final judgment nor decree, on hearing of merits, can be set aside after term for any error into which the court may have fallen. The law does not permit judicial tribunals to exercise a revisory power over their own adjudications, after, in legal contemplation, they have passed from the breast of the judge. Nor is error, or misapprehension of parties or their counsel, a justification. Freeman

on Judgments, Sec. 101; Kihlholz v. Wolff, 8 Brad. 371; Fix v. Quinn, 75 Ill. 232; Coarsen v. Hixon, 78 Ill. 334; Cook v. Wood, 24 Ill. 295.

Where a judgment has been rendered at a term of court, and the court adjourns for the term, the court may, at a second term, on notice, amend the judgment in a mere formal respect; but after the term closes, the court has no power to vacate or set aside a judgment. Jansen v. Grimshaw, 125 Ill. 474; Knox v. Winsted Bank, 57 Ill. 330; Troutman v. Hills, 5 Ill. App. 396.

Appellee misconceived her remedy; she should have proceeded by bill of review. To produce a material alteration in a final decree after the term has passed a bill of review is required.

A bill of review is a bill filed in the same court to reverse or modify a decree that has been signed and enrolled, for error in law apparent on the face of the decree, or on account of new facts discovered since the decree was entered in the original cause. 3 Ency. Pl. and Pr. 570, n. 1; Bramblet v. Pickett, 2 A. K. Marsh. (Ky.) 10; Stewart v. Beard, 3 Md. Ch. 227 and 462; Hodges v. Davis, 4 Hen. & M. (Va.) 400.

In this country, what constitutes enrollment is the passing of a decree, and the adjournment of the court for the term. 3 Ency. Pl. and Pr. 570, n. 1.

After filing or recording the decree, it can be set aside or modified in the same court only by original bill to impeach the decree, or on bill of review. Hughes v. Washington, 65 Ill. 249; Radge v. Berner, 30 Ill. App. 182; Lilly v. Shaw, 59 Ill. 76.

A bill of review will lie where new matter affecting the issue has been discovered since the decree was entered. Judson v. Stevens, 75 Ill. 255; Knobloch v. Mueller, 123 Ill. 554.

And such as would have produced a different result. Boyden v. Reed, 55 Ill. 458; Aholtz v. Durfee, 122 Ill. 286; 3 Ency. Pl. and Pr. 580, 581.

In equity, the assignee of a judgment will be protected

from any acts of the parties after notice of the assignment. After this the former owner and the debtor can do nothing to defeat the rights of the assignee. Hughes v. Trahern, 64 Ill. 49.

And courts of law as well will enforce the rights of the assignee of a judgment in attachment. Donk v. Alexander, 117 Ill. 330.

The assignee of a judgment, taken without notice that the judgment debtor has an equitable right to have an unsettled demand set off against it, will be protected. Notice that the judgment debtor has a demand against the plaintiff in the judgment, is not any ground for allowing a set-off to defeat the equitable right of the assignee. Ulmann v. Kline, 87 Ill. 268.

" The general rule is, that a purchaser is not to be charged with notice of deeds lying outside of his chain of title. (Carbine v. Pringle, 90 Ill. 30.) " C. & E. I. R. R. v. Wright, 153 Ill. 312.

A *bona fide* purchaser or incumbrancer of the legal estate in land will be protected · against a prior equitable title of another of which he had no notice. Robbins v. Moore, 129 Ill. 44.

If a party purchases and obtains a conveyance of land (or a lien thereon), having no notice, actual or constructive, of a prior mortgage, he takes the land free from incumbrance. Dunlap v. Wilson, 32 Ill. 517.

G. Fred Rush, and J. C. McBride, attorneys for appellee.

When appellant, Mrs. Yarnell, took a general judgment instead of a specific judgment as to the property levied upon, she thereby abandoned her attachment it and not having procured an order of court to issue a writ directing a sale of the specific property, then the issuing of such writ would be without authority of law, and, is very doubtful if it would be such an issuing of an execution as would even preserve the lien of the judgment after one year or support a sale of the land and give title thereto.

It certainly would not be a lien, after abandoning the at-

tachment, only from the date of the judgment.   Wasson v. Cone, 86 Ill. 46; Saterlee v. Hickman, 38 Ill. App. 139.

She had notice, both actual and constructive, of the equities and rights of appellee when she instituted her suit in attachment, and was bound by such notice, and could not acquire a lien superior to that, in fact, existing in favor of appellee.   Ogden et al. v. Havens et al., 24 Ill. 60; Cox v. Milner, 23 Ill. 479; Williams et al. v. Tatnall, 29 Ill. 565; Snyder v. Partridge, 138 Ill. 185; Pomeroy's Equity Jur., Vol. 2, Secs. 670, 672, 723.

" A judgment is not assignable at common law or under our statute so as to vest the legal title in the assignee.   It is a mere chose in action, and only the beneficial interest passes to the purchaser.   The assignee takes the judgment subject to all the equities that existed between the parties to the record.   McJilton v. Love, 13 Ill. 487; Hughes v. Trahern, 64 Ill. 49; Padfield v. Green, 85 Ill. 529; Winslow v. Leland, 128 Ill. 337; Franklin Savings Bank v. Taylor, 131 Ill. 377; Sutherland v. Reeve, 41 Ill. App. 303; Pomeroy's Equity Jur., Vol. 1, Sec. 221.

The order announced by the court, on March 30, 1891, in the suit between appellee and J. S. Wooley, authorizing a decree by the memoranda made upon his docket, is not a decree, but only a guide in preparing a decree, and has no binding effect until the decree is prepared and approved by the court.   Even the filing of a decree with the clerk in vacation, without the approval or order of the court, does not constitute it a decree.   Stevens v. Coffeen, 39 Ill. 148; McLain v. Vanwinkle, 46 Ill. 406; Hughes et al. v. Washington, 65 Ill. 245; Edwards v. Evans, 61 Ill. 492; Black on Judgments, Sec. 301, 328.

When J. S. Wooley waived the issuing and service of process at the March term, 1891, he did not by the terms of such writing, consent to the rendition of a decree at that term, and the court committed an error in fact as to the terms of the entry of his appearance, and was mistaken as to the description of the land involved; and even if a decree had been rendered it was perfectly proper for the court to set it

aside at a subsequent term. This was an error in fact and could be corrected at any time within five years on motion. Starr & Curtis' Statutes, Chap. 110, Sec. 67; Lyon v. Boilvin, 2 Gil. 629; Beaubien v. Hamilton, 3 Scam. 217; Mains v. Cosner, 67 Ill. 536; Claflin et al. v. Dunn, 129 Ill. 247; Black on Judgments, Sec. 300.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This is an appeal from a decree correcting a mortgage as to the description of the land therein conveyed and foreclosing the mortgage as corrected.

On the 1st of September, 1876, James S. Wooley and wife executed the mortgage in question for the purpose of securing the payment of one thousand dollars, borrowed money, to the appellee five years after date, with interest to be paid annually, intending thereby to convey the southeast quarter of the southwest quarter of section 18, T. 11, N., R. 1 east 3d P. M., but by mistake the land was described as being in range 1 west.

Christian county, in which the land is situate, contains land answering both descriptions.

The land which should have been described was a part of a farm of 137 acres lying near the city of Pana, then owned by said Wooley and occupied by him and his family.

The other ninety-seven acres had been mortgaged some time before to secure a note held by one Spaulding, of Boston, Mass., who also held an unsecured note of said Wooley.

Electa W. Yarnell was the only child of said Wooley and wife, and with her husband James H. Yarnell, lived with her parents on the farm at the time the mortgage in question was executed. The mortgagee, Mrs. Brown, was a sister of Mrs. Wooley and lived in the State of Michigan. The negotiations which resulted in the loan were conducted by correspondence.

Mr. Yarnell, who was an attorney at law and a notary public, procured an abstract of title, the land being correctly described therein, which was sent to Mrs. Brown for examination.

She returned it without objection, and he prepared the mortgage, which was executed by Wooley and wife and acknowledged before him as a notary public. After the mortgage was recorded, at Mrs. Brown's request he made a memorandum of it at the foot of the abstract. The mortgage and the abstract were held by Mrs. Brown until August, 1890, when they were placed in the hands of her attorney for legal proceedings.

Mrs. Yarnell and her husband continued to reside with her parents until the death of her mother which occurred in 1877. Then the relations between the father and daughter became (and have ever since been) unfriendly, and she and her husband moved to Pana, where they have since resided. In the year 1880, or 1881, Mr. Wooley removed from Illinois and has since resided in New Hampshire.

In 1889 Mr. Spaulding, as a gift, transferred to Mrs. Yarnell his note, and mortgage on the 97 acres, and also the unsecured note, which was for $600.

She transferred the mortgage and the note it secured to W. R. Yarnell, her husband's father, who began foreclosure proceedings thereon and afterward in July, 1889, she began a proceeding by attachment on the note for $600 and caused the writ to be levied on the land in dispute.

In June, 1890, a decree of foreclosure was obtained by W. R. Yarnell and she recovered a judgment in the attachment suit, and thereupon, in order to secure her attorney, William L. Gross, for what she then owed him and might thereafter owe him on account of his services and advancements of costs and expenses in said litigation—both cases—she assigned her judgment to him by an instrument in writing which was duly filed with the clerk and placed among the papers in the case.

Both of said cases were contested by Wooley and were carried to the Appellate and then to the Supreme Court—but the decree and judgment were affirmed in each of said courts.

Wooley paid the interest on his indebtedness to Mrs. Brown until 1889. From the indorsements it appears the payment

Yarnell v. Brown.

was made promptly on the 1st of September in each year except 1889, when it was made on the 4th of November. The interest for 1890, due September 1st, was not paid, and on the 7th of November of that year the original bill in this case was filed for the foreclosure of the mortgage, making said Wooley, Electa W. Yarnell, W. R. Yarnell and Wm. L. Gross parties defendant.

At the March term, 1891, the appearance of said Wooley was entered in writing, the bill was dismissed as to the other defendants who had not been brought into court, default was taken as to Wooley, and an order of foreclosure was entered for the amount due. At the August term, 1891, on the motion of complainant, the order entered at the March term was set aside and the cause was continued. At the following November term an amended bill was filed in which the mistake in description was alleged with prayer for correction and that the mortgage so reformed might be foreclosed.

The said Electa W. Yarnell, William L. Gross and W. R. Yarnell were made parties defendant and filed their answers to the amended bill, in which they denied all knowledge of the matters alleged, set up the judgment in the attachment suit and the assignment thereof to said Gross, and averred that on the 19th of June, 1891, the said Gross had bought the land at a sale by the sheriff under a special execution issued on said judgment and had received a certificate of purchase therefor, he having bid the amount due on the judgment, interest and cost, $1,434.24, and that when he took said assignment he was without notice that complainant had or claimed any lien on said land.

At the March term, 1892, leave was given to file amended answers by June 1st, and the cause was continued.

Amended answers were filed by Mrs. Yarnell, W. R. Yarnell and W. L. Gross, in which it was alleged that a decree had been obtained at the March term, 1891, on the original bill, and that the court had no right or power at the next term to set aside said decree, and that it had no jurisdiction to permit the bill to be amended or to require these defendants to answer the same.

A motion was filed to strike the amended answers from the files, but no action was taken upon the motion. At the November term, 1892, the said James S. Wooley filed his answer admitting all the allegations of the amended bill. At the March term, 1895, the cause was heard and a decree was entered according to the prayer of the bill as amended, it being found that Mrs. Yarnell had notice of the equities of the complainant and that her interest as well as that of defendant Gross was subject to the lien of complainant, and ordered a sale of the lands for the payment of the amount found due the complainant with costs.

As to W. R. Yarnell, it was found he had no interest in the premises, and he was dismissed with his costs.

From this decree Mrs. Yarnell and William L. Gross have prosecuted the present appeal.

The first point presented by the brief of the appellants is that the court had no power at the August term, 1891, to set aside its decree rendered at the March term preceding.

It may be admitted it is a well settled rule of practice that generally the court can not set aside a decree rendered at a former term for mere error of law, and that the proper course is by bill of review. It appears, however, that no decree, such as the court intended to render, was ever entered upon the record. The entire entry, as it appears, is as follows :

"This day comes the complainant, by J. C. Essick, his solicitor, and the appearance of J. S. Wooley is entered in writing. Rule on J. S. Wooley to answer instanter; and the bill is dismissed as to Electa W. Yarnell, W. L. Gross and Wm. R. Yarnell, they each to recover their costs. The default of James S. Wooley is taken, and it is ordered and decreed by the court, that decree be taken *pro confesso* for foreclosure and sale, for the sum of $1,138.85, with costs of this proceeding to be taxed. Cause stricken for sale."

This was merely a copy of the judge's minutes, and was not in any proper sense a decree in the case. No direction was given by which a sale could be made, and it was impossible for the complainant to obtain any satisfaction of the amount due her without an amendment in this respect.

It appears from the proof that counsel for complainant prepared a full decree, based on the minutes of the judge, and in the course of doing so discovered the error in the description of the land and therefore went no further, but the clerk entered of record the order as above. Practically speaking, then, there was no decree beyond a mere finding that the bill was confessed and that there was a certain amount due the complainant.

The decree was incomplete and it was necessary to amend and add to it in the most important and substantial particulars of its execution and enforcement.

It would seem, therefore, that this was not a case where a bill of review, or in the nature of review, was necessary.

It was simply the case of an unfinished and incomplete decree, and the court still had jurisdiction.

While in this inchoate condition the decree might be amended, changed or wholly set aside.

But were this not so, it is not clear that these appellants can take advantage of the objection, because they were not parties to the decree. James S. Wooley, who alone was a party, has not objected.

The order setting aside the decree of the March term was made at the August term and it was not until the November term that the appellants were called upon to answer the amended bill then filed. For all practical purposes this was a new suit introducing an entirely new and very important feature and making new parties. It could not concern or unfavorably affect these new parties that an irregularity had occurred in the old case after they had been dismissed from it, and if the only party whose rights were affected by such action was willing to waive or did not complain of the matter why should they object?

Again, if they had any just cause of objection they should have made it before answering to the merits. It went merely to the form of proceeding, and did not reach the real point in controversy.

The objection was merely dilatory, and as it involved only a change in the frame of the bill, it should not be con-

sidered along with the question as to the equities of the parties as disclosed by the evidence. This point must be overruled.

It is next argued that the evidence fails to show that Mrs. Yarnell had knowledge of the land intended to be conveyed by the mortgage.        .

As already stated she was the only child, and at the time it was executed she was living with her husband as a part of her father's family.

The loan was made by a relative. It was the subject of considerable correspondence and of frequent mention in the family. The abstract was procured and the mortgage was drawn by her husband. Mr. Wooley testifies the farm of which this forty was a part, was the only land he owned in Illinois. He also says she knew this fact and was well acquainted with his business transactions at the time he gave the mortgage.

A few months after Mrs. Yarnell had obtained her judgment in attachment, and while the appeal therefrom was pending, she wrote the following letter to her cousin, Mrs. Willis, who was a daughter of Mrs. Brown.

·                              PANA, ILL., Sept. 24, 1890.

Dear Cousin Olympia: Not knowing your mother's address, and wishing to communicate with her on a little matter of business, I take the liberty to advise with you concerning same. Several years ago my father gave Aunt Lephia a mortgage on forty acres of land, being part of his farm near Pana, as security for the payment of $1,000 which he had borrowed from her. He has not lived in Illinois much since my mother's death, and since his second marriage he has tried to deprive me of any right and title to any of his property, and to dispose of it to his new relations. Through a fr'en l of my mother's, who also had a claim against him, I have now some hope of regaining a part of it. But in order to do so I must first ascertain from your mother whether or not the interest has been paid up to her on that loan, and if not, what is the present amount of the debt to her.

Will you be kind enough to ask her about it ?   If you can, do so at once, and give me the desired information.   I am sorry to say that I have been out of correspondence with my mother's relations for so long that I know very little in regard to their present whereabouts.   But I would like very much to hear from you in a cousinly way, as well as on business, if you care to write, and am always interested in those who belong to any of my mother's family.   Hoping to hear from you at an early date, I remain, your cousin,

ELECTA WOOLEY YARNELL.

In October, 1890, J. H. Yarnell, her husband, went to see Mrs. Brown at Racine, Wisconsin, where she then resided, proposing to buy her mortgage, referring to the land as a part of the Wooley farm, and claiming to represent the person, himself or his father, who was about to get control of the rest of the farm.

He was at the time, and had been from the beginning, the attorney of his wife in the attachment suit.

It is not shown whether W. R. Yarnell, in whose name the foreclosure suit against the ninety-seven acres was conducted, owned the mortgage against the land, or whether he was acting merely for Mrs. Yarnell, but it appears that the assignment of the judgment was for the purpose of securing the assignee for his services and disbursements in the foreclosure as well as the attachment case.

J. C. Essick testified that he was one of the attorneys for Wooley in that and the attachment suit, and that prior to the trial of those cases he had a conversation with Mrs. Yarnell and her husband in which she said that Mrs. Brown had a mortgage for $1,000 on a part of the farm.   Afterward he received the note and mortgage from Mrs. Brown for collection and informed Mr. Yarnell of it, who said he or those he represented would pay it off—wished to know if the papers would be transferred to them in that event—and wanted time to make arrangements.

These statements are substantially denied by Mr. and Mrs. Yarnell.   He admits that he knew the land intended to be mortgaged was a part of the farm, but he did not ob-

serve the misdescription, and evidently did not know there was a misdescription until it was discovered shortly after the March term, 1891, as already stated. She testifies that she knew her father borrowed some money from Mrs. Brown but did not know the terms of the arrangement, and did not of her own knowledge know that he gave a mortgage; afterward, in her direct examination, she says she had forgotten that a mortgage was made until after she brought the attachment suit, and in her cross-examination says she has a recollection there was talk of his making a mortgage to secure the $1,000. She explains writing the letter to Mrs. Willis thus: that in August, 1890, and after the attachment suit was begun, one of her relatives from the East visited her at Pana, having just visited Mrs. Brown, and he said that Mrs. Brown felt uneasy about the money Mr. Wooley owed her, that she could get no replies to letters she had written him, that the interest was unpaid for one year and that she did not know what to think about it.

Now it will be noticed that Mrs. Yarnell does not state that her relative said anything about a mortgage being held by Mrs. Brown, and further, that as the interest had been paid up to September 1, 1889, there was no interest due at the time when these remarks of Mrs. Brown must have been made, and hence there was no occasion to write to Mr. Wooley on the subject, and nothing for her to be uneasy about.

When all the evidence is considered in the light of the situation of the parties and the other circumstances at the time the mortgage was executed, we are entirely satisfied with the conclusion reached by the court that the defendant, Mrs. Yarnell, had notice of the equities of the complainant. Her testimony, and that of several other witnesses, including her husband and Mr. Essick, was taken orally before the court; and if this question of fact were more difficult than it is, this consideration alone would add great weight to the conclusion reached. Brown v. Stewart, 159 Ill. 212, and cases cited.

We are not disposed to interfere with the decree on this point.

Assuming that Mrs. Yarnell had such notice, the next question is, how her co-defendant and assignee, Gross, is affected by that fact.

He took the assignment of the judgment as security for his fees, earned and to be earned, and for disbursements, and though since he filed his answer herein he has received a sheriff's deed for the land, he claims to hold it in pledge merely, and concedes that Mrs. Yarnell has an equity of redemption against him. He is merely a mortgagee, and upon payment of the amount due him from Mrs. Yarnell, must convey the land to her, as he would have been required to assign the judgment back to her had he received what was due him before the land was sold under the special execution. Hence, as the land must be held subject to the lien of Mrs. Brown's mortgage, so far as Mrs. Yarnell is concerned, the only question is whether Mr. Gross, as such mortgagee, is entitled to priority as against Mrs. Brown, and this must be solved by ascertaining whether, by the assignment of the judgment, he obtained a better position than that held by Mrs. Yarnell, his assignor. By the law merchant and by the statute of Anne, commercial paper, *i. e.*, bills of exchange and promissory notes, may be transferred before maturity so as to cut off defenses that would be good as between the original parties, but as to other choses in action the transfer passes a mere equitable or beneficial interest. In the case of commercial paper the assignee has a legal interest which he may assert by appropriate proceeding in his own name in a court of law, but in the case of other choses in action he acquires an equitable interest only and must seek his remedy in a court of equity. In the case of McJilton v. Love, 13 Ill. 486, it was held that a judgment, being a chose in action, can not be transferred so as to vest the legal interest in the assignee. A beneficial interest only passes and the assignee takes the judgment subject to all equities between the original parties. This rule is well settled and has been repeatedly approved in this State, but we have found no case in our reports where the question was, as here, whether the assignment is subject to the equities of third persons.

In Pomeroy on Equity Jur., Sec. 703, it is said : " The doctrine stated in its most comprehensive form is that an assignment of every non-negotiable thing in action, even when made without notice of the defect to the assignee, is subject in general to all equities against the assignor. This doctrine has three different applications; (1) where the equities are in favor of the debtor or trustee; (2) when they arise between successive assignors and assignees, that is, in favor of some prior assignees; (3) where they arise entirely in favor of third persons, the two latter including what are often called latent equities." As to the first class, where the equity is in favor of the debtor, the authorities are unanimous. As to the other two, which, as the author says, are intimately connected and are only different phases of the same thing, there is a want of harmony in the adjudications; but, as he thinks, the weight of authority, as well as the principle involved, supports the proposition that the assignee takes subject to all equities, whether in favor of the debtor or of prior assignors, or of third persons, though conceding that respectable courts have maintained the position that the equities of the debtor only will be effective as against the assignee, and that the latter is never affected by the equities of third persons, especially those called latent equities.

As to mortgages, it has been held by our Supreme Court that the assignee without notice is protected against the latent equities of third persons. Olds v. Cummings, 31 Ill. 188; Silverman v. Bullock, 98 Ill. 11; Himrod v. Gilman, 147 Ill. 293; Humble v. Curtis, 160 Ill. 193.

In the first of these cases the equity of the mortgagor only was involved, but in the others the equities of third persons were involved. In all the court cite and approve Murray v. Lylburn, 2 Johns. Ch. 441, in support of the doctrine that while the assignee of a chose in action takes it subject to the equities of the original debtor, yet he is free from those of third persons.

As stated by Pomeroy, the courts of New York have not adhered to Murray v. Lylburn. Indeed, in some of the

New York cases, it is held that the expressions of that case, which are relied upon as authority for the doctrine, are mere *dicta* and the doctrine is denied.

However it may be in New York or elsewhere the rule seems to be settled in Illinois. If the assignee of a mortgage is protected against the latent equities of third persons, it would seem clear that the assignee of a judgment should enjoy similar immunity.

A judgment and a mortgage should stand upon the same footing in this respect, and the same principle should be applied. Each is a mere chose in action, not negotiable at law, and as to each, the interest of the assignee is merely equitable and enforceable as such. The logic of the ruling of the Supreme Court applied to the present case, which, as already shown, is that a judgment assigned merely in pledge would subordinate the lien of Mrs. Brown to that of Mr. Gross, giving him the first lien upon the land, to the extent of the amount due him from Mrs. Yarnell, for the securing of which the judgment was assigned to him.

The decree must therefore be reversed, with direction to ascertain the amount due him, and making his claim the first, and the amount due Mrs. Brown upon her mortgage the second lien upon the land, and to order a sale of the same accordingly. Reversed and remanded, with directions.