## Rockford National Bank v. The Young Men's Christian Association Gymnasium Co. et al.

1. VOLUNTARY ASSIGNMENTS—*Title of the Assignee.*—An assignee under the insolvent acts takes no greater interest in or better title to the property assigned than the assignor possessed.

2. PROMISSORY NOTES—*Taker of Past Due Paper.*—The rule that the taker of past due commercial paper takes it subject to all equitable and legal defenses, means defenses and equities which the maker has against the note, and has no reference to any equities of intermediate indorsers and indorsees of which the indorsee after maturity has no actual notice.

3. COMMERCIAL PAPER — *Transfers, When Overdue.*— Commercial paper transferred when overdue is not subject to equities existing between the maker and parties other than the payee, or between the intermediate parties.

4. SAME—*Transfers by Intermediate Holders—Notice of Fraud.*—A transfer by one who is not an original party to a bill or note is not notice of fraud in his possession of the instrument.

5. SAME—*Failure of Consideration— Intervening Indorsements.*—

Rockford Nat. Bank v. Y. M. C. A. Gymnasium Co.

Failure of the consideration for an intervening indorsement can not be set up by the maker of a note against an indorsee after maturity.

6. Same—*Unknown Equities in Favor of Third Parties.*—In general, unknown equities in favor of third persons constitute no valid defense even against a purchaser after maturity. The equities to which such paper is subject are those which arise out of the instrument itself.

7. Same—*Equities Between Remote Indorsers and Indorsees.*—The indorsee of overdue paper can not be prevented from recovering on the instrument on account of equities arising between remote indorsers and indorsees. He is only subject to those equities which arise between the original parties and between himself and his immediate indorser.

**Bill for an Injunction, etc.**—Trial in the Circuit Court of Winnebago County; the Hon. Charles H. Donnelly, Judge, presiding. Hearing and decree for complainants. Error by defendants. Heard in this court at the May term, 1898. Reversed and remanded. Opinion filed September 26, 1898.

## Statement.

This was a bill in equity filed by the Young Men's Christian Association Gymnasium Company against the Rockford National Bank and others to enjoin the bank from collecting certain notes it held, and to compel it to place said notes and the avails of one note already collected in the hands of a receiver to hold as collateral security for certain notes given by the Gymnasium Company to other parties. Warren Gilmore, the holder of one of said other notes given by the Gymnasium Company, filed a cross-bill of like tenor. Answers were filed and there was a hearing and a decree for complainants in the original and cross-bills, from which decree the bank prosecutes this writ of error.

The Gymnasium Company wished to borrow $4,000, and made an arrangement with Knapp & Parmele, loan agents, by which it executed and placed in the hands of Knapp & Parmele one note to Warren Gilmore for $2,000, one note to Elizabeth S. Stires for $600, and one note for $600 and two for $400 each, payable to Knapp & Parmele, each dated September 3, 1891, due in three years, with interest at seven per cent per annum, payable semi-annually. Each of these notes was guaranteed on the back by five parties, one of whom was Marcus S. Parmele, of said firm of Knapp & Parmele.

As collateral security for their payment said Gymnasium Company delivered to Knapp & Parmele twenty notes, each for the sum of $200, each dated August 5, 1891, each payable to the Gymnasium Company three years after date, with interest at seven per cent per annum payable semi-annually, each signed by a different maker, and each indorsed in blank by said Gymnasium Company. These notes aggregated $4,000, one dollar of collateral security for each dollar of the loan. Knapp & Parmele gave a receipt for said twenty notes, stating they held them as collateral for said principal notes; and that when said principal notes were paid the collateral security would be delivered upon the return of the receipt. This receipt and its signature is in the handwriting of Parmele, and the evidence tends to show that although the firm name was used he did all the business relating to the matter here litigated. The evidence is understood to show that the Gymnasium Company received from Knapp & Parmele $4,000 on the loan, and that the notes were thereafter owned and held as follows: Warren Gilmore the $2,000 note, Elizabeth Stires one $600 note, Katharine Scott one $600 note, Mary R. Tanner one $400 note and said Parmele one $400 note.

In September, 1896, Parmele applied for and obtained from the bank a temporary loan and delivered to it six of said $200 notes as collateral security for said loan. Each of said notes was past due, but each bore upon its back indorsements of the payment of interest thereon to August 8, 1896, a few days before they were so delivered to the bank as collateral. Said bank took said six notes without any notice of the manner in which, or the purposes for which, they were held by Parmele, and with nothing upon their face to give notice except the fact they were past due. In October, 1896, Parmele failed in business and made an assignment for the benefit of creditors to Joel B. Whitehead, who is a party to this suit, and who as such assignee received from Parmele said $400 note, and still holds the same as assignee. Parmele did not pay the bank the money he had borrowed, and it collected one of said $200 notes

so deposited with it as collateral, and brought suit upon another, and thereupon the Gymnasium Company filed this bill.

WORKS & HYER and R. K. WELSH, attorneys for plaintiff in error.

A. D. EARLY, WM. LATHROP and FISHER & NORTH, attorneys for defendants in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

We are of opinion that even upon the theory of defendants in error the decree is wrong. We understand the evidence to show Parmele was the owner of $400 of the principal secured by said collaterals and the unpaid interest thereon. He was also one of the guarantors upon all the principal notes of the Gymnasium Company, aggregating $4,000. He and his firm therefore did not hold said twenty collateral notes solely in trust for others, but partly for the benefit of Parmele himself. His $400 note against the Gymnasium Company was past due. He had been by the Gymnasium Company purposely clothed with the possession and legal title to said collateral notes that they might be used to pay said principal loan if the Gymnasium Company did not pay it when due. As between all the parties, Parmele had a right to collect, sell or dispose of $400 of said collateral notes to pay the $400 principal note he held against the Gymnasium Company. As to $400 of the collaterals Parmele could have maintained a suit against their makers, even as against Gilmore, Stires, Scott and Tanner. To that extent the bank is entitled to hold and enforce its collateral security, and the Gymnasium Company can be made good therefor by requiring the assignee to surrender to it the $400 note he holds, and to which he has no right except what Parmele had. Home Savings & State Bank v. Wheeler, 74 Ill. App. 261.

We also hold that the rule that the taker of past-due

commercial paper takes subject to all equities, or to all equitable and legal defenses, means defenses and equities which the maker has against the note, and has no reference to any equities of intermediate indorsers and indorsees of which the indorsee after maturity has no actual notice. In 2 Randolph on Commercial Paper, Sec. 675, that author states the rule to be that "commercial paper transferred when over-due is not subject to equities existing between the maker and parties other than the payee, or between the intermediate parties." "Such a transfer by one who is not an original party to the bill or note is no notice of fraud in his possession of the instrument." Again, in Sec. 676, "Failure of the consideration for an intervening indorsement can not be set up by the maker of a note against an indorsee after maturity." And in Sec. 678, "In general, unknown equities in favor of third persons constitute no valid defense even against a purchaser after maturity. The equities to which such paper is subject are those which arise out of the instrument itself."

Tiedeman on Commercial Paper, Sec. 295, says that the indorsee of over due paper "can not be prevented from recovering on the instrument on account of equities arising between remote indorsers and indorsees. He is only subject to those equities which arise between the original parties and between himself and his immediate indorser." Story on Promissory Notes, Sec. 178.

In this case there is no claim that the makers of these six notes for $200 each have any defense to said notes. There are no equities between them and the payee. There are no equities between the bank and Parmele. No other names appear upon the paper except those of the maker and the payee. The blank indorsement of these notes by the payee, and their delivery by the payee to Parmele or Knapp & Parmele, clothed Parmele or his firm with the actual legal title. The equities here set up are those which have arisen between Knapp & Parmele and the Gymnasium Company, and also those between Gilmore and the other holders of said principal notes on the one hand, and the Gymnasium Company and

Knapp & Parmele on the other.   The Gymnasium Company and Gilmore, and said other holders, permitted Parmele to take these collaterals clothed with the legal title and with the apparent unrestricted power of disposition.   Inquiry by the bank of the signers of said collaterals whether they had any legal or equitable defenses would not have elicited information of the equities of these other parties.   The taker after maturity can inquire of the maker whether the note is paid and whether he has any equitable defenses thereto, but he can not make such inquiry of the whole world.   The rule established by the decree in this case would entirely prevent the sale and transfer of past-due paper, for no one would take the risk of being subject to the equities of unknown parties.   Some language is found in the cases which might be construed to support the decree, but it would generally be found the words were used with reference to the maker.   Thus, Lord v. Favorite, 29 Ill. 149, the language of which is relied upon to support this decree, was a suit by the indorsee after maturity against the maker, and the court had not before it for determination the rights of intermediate holders of the note.   The same is true of other Illinois cases cited—they are suits against makers, and do not involve the question here presented.   So, too, language cited from the text books which seems to favor the position of appellees, is found not to do so when carefully examined.   Thus Tiedeman on Commercial Paper, Sec. 295, says he who receives paper after it has fallen due gets no better title than his transferrer had, and can not claim exemption from equitable defenses which could be set up against his indorser.   Yet when the whole section is examined it will be found the author is referring to the relative rights of the indorsee after due and the maker, and means that such indorsee gets no better title against the maker than his transferrer had, and can not resist the equitable defenses the maker, if sued, could have set up against the one who transferred it after maturity.

Knapp & Parmele had the legal title to this paper, and had been clothed with it that they might collect or other-

wise use it to pay the principal notes, if not paid when due. In September, 1896, said principal notes were all past due and unpaid and Parmele had the right then to collect, sell or otherwise dispose of said collaterals to raise the money to pay the principal notes. If Parmele had used the money he got at the bank to pay said principal notes the transaction would have been good between all the parties. The Gymnasium Company and the holders of said principal notes permitted Parmele to hold such collaterals without restriction, and with such an indorsement as might deceive, and they, rather than the bank, should suffer the consequent loss.

If, after maturity, said notes could not be indorsed, but only assigned (Tiedeman on Commercial Paper, Sec. 295), we see no reason why the rule controlling their assignment should be any more stringent than is applied to the assignment of a mortgage, in which intermediate equities do not prevail, but only those of the mortgagor. Humble v. Curtis, 160 Ill. 193; Himrod v. Gilman, 147 Ill. 293; Silverman v. Bullock, 98 Ill. 11; Olds v. Cummings, 31 Ill. 188.

The bank only holds said notes to secure the payment of its debt. The record does not disclose what sum it loaned Parmele on the strength of said six collaterals. That sum should be ascertained and fixed by another decree, and if any of said collaterals, or the avails thereof, remain after said loan by the bank to Parmele is paid, the same should be applied pursuant to the receipt given by Parmele.

For the reasons stated, the decree is reversed and the cause remanded for further proceedings, in conformity with this opinion. Reversed and remanded.