## KIRK HIMROD

*v.*

## GEORGE D. GILMAN *et al.*

*Filed at Ottawa October 26, 1893.*

1. DEED OF TRUST—*presumption as to signature.* On bill to foreclose a deed of trust given to secure the payment of the grantee's notes therein described, when the deed is properly acknowledged and recorded, it will be presumed, in the absence of anything showing the contrary, that the execution of the genuine notes and deed of trust was cotemporaneous, and, both being genuine, that the person who signed the one signed the other.

2. Where it is admitted that a party executed a deed of trust to secure the payment of his two notes given for the purchase money of the land described in the deed, in the absence of anything suggesting the contrary, the presumption will arise that the signature thereto was written by him. But such presumption may be overcome by evidence tending to show that the deed was not in fact signed by him in person.

3. HANDWRITING—*proof by comparison with other writing.* It is well settled in this State that the genuineness of a signature can not be proved by comparing it with an admittedly genuine signature to papers or documents not in evidence in the case, and which are collateral to the issue, and therefore not admissible in evidence for other purposes.

4. The genuineness or falsity of a disputed signature to a paper otherwise admissible in evidence, may be proved by comparison with a signature, admitted or proved to be genuine, to a paper which has been admitted in evidence under the issues.

5. ASSIGNMENT OF MORTGAGE—*equitable defenses against assignee.* The assignee of notes secured by mortgage, when he buys before their maturity, will take the mortgage as an incident of the debt, subject to the equitable defenses existing in favor of the mortgagor, but not subject to the latent equities of third persons in the subject involved in the assignment, of which he has had no notice.

6. SAME—*priority of equities.* It is only when the equities are equal, that he whose equity was first obtained has the better right. So when the payee of notes secured by mortgage assigns them, the security will pass to his assignee, and if the payee assigns spurious notes corresponding to those described in the mortgage, nothing will thereby pass, although the purchaser of the spurious notes may have been the first assignee.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

One Frank E. Brady conveyed to George D. Gilman certain real estate, subject to incumbrances, and Gilman executed a trust deed to William Loeb, dated September 15, 1888, securing the payment of two notes, of $4500 each, made by Gilman, and payable eighteen months after date, to his own order, and being part of the purchase price of the property conveyed by Brady. On October 2, 1888, Brady borrowed from Springer $3500 on his own note for that sum, secured by the deposit with Springer of two notes purporting to be the notes of Gilman before mentioned, and also delivered the original trust deed securing the same, which Springer placed on record and subsequently got back from the recorder. Three days later (October 5) Brady exhibited to Bolton two notes of George D. Gilman, for $4500 each, purporting, on their face, to be secured by a trust deed to William Loeb, and applied for a loan of $5000 thereon, representing that the trust deed was in the recorder's office for record. Bolton finding, from an

abstract of title furnished, that the title was in Gilman, and from Loeb, the trustee, that the trust deed had been made and recorded, loaned Brady $5000, taking his note and an assignment of said two notes as collateral security therefor. The two notes deposited with Springer, and the two with Bolton, all purport, on their face, to be secured by the trust deed to Loeb, were alike in terms, and both sets answered the description in the trust deed. Subsequently, and before any of the notes were due, Springer, under a power in the note from Brady, sold the two notes deposited as collateral with him, to plaintiff in error, Kirk Himrod, for value. The indebtedness having matured, Himrod, claiming to be the owner of said notes secured by said trust deed to Loeb, filed the original bill herein to foreclose the said trust deed, making Gilman, Loeb, Brady and the owners of prior incumbrances parties defendant. Defendant in error James Bolton, upon his petition, was admitted to intervene, and filed his answer and cross-bill, in which it was alleged that the notes held by Himrod were not the notes secured by said trust deed, but that the notes held by him, Bolton, were the notes so secured, setting up that they were unpaid, and asking foreclosure in his favor. Gilman, and other defendants served and not answering, were defaulted. Issues were joined, and the cause referred to a master to take proofs.

In addition to the foregoing facts the master reported the testimony of experts who had made examination and tests, and who testified that the signature of George D. Gilman to the notes held by Himrod was not in the same handwriting as the signature of George D. Gilman to the trust deed, and that they were not written by the same person.

The court found and decreed in accordance with the allegations and prayer of the cross-bill, and the complainant in the original bill prosecutes this writ of error to the Appellate Court, where the decree of the circuit court was, upon error, affirmed.

Messrs. MILLER & STARR, for the plaintiff in error:

On the sale of the notes to Springer by Brady there was a warranty of their genuineness. *Herrick* v. *Whitney*, 15 Johns. 240.

As we get a good title to the indebtedness and security by estoppel, Bolton, as Brady's subsequent assignee of the same mortgage security, and privy, was affected by the same estoppel. *International Bank* v. *Bowen*, 80 Ill. 541; *Wood* v. *Seely*, 32 N. Y. 105; *Kinnear* v. *Mackey*, 85 Ill. 96; *Parker* v. *Crittenden*, 37 Conn. 148.

The rule that Bolton, as a subsequent purchaser of this mortgage, took subject to equities, is not limited to equities between the original parties to the mortgage, or to equities in favor of the mortgagor, but includes estoppels against the mortgagee, in favor of others, and want of title in his assignor. Bolton took only the title which Brady had. Brady having disposed of the security to us, could not dispose of it to Bolton, except subject to our rights. *Walker* v. *Dement*, 42 Ill. 272; *Sumner* v. *Waugh*, 56 id. 539; *Schafer* v. *Reilly*, 50 N. Y. 67; *Bush* v. *Lathrop*, 22 id. 535, and cases cited; *Scott* v. *Magloughlin*, 33 Ill. App. 162; 133 Ill. 35; *Greene* v. *Warnick*, 64 N. Y. 220; *Viele* v. *Judson*, 82 id. 32; *Union College* v. *Wheeler*, 61 id. 88; 1 Jones on Mortgages, sec. 844; *Davies* v. *Austen*, 1 Ves. Jr. 247; *Beebe* v. *Bank*, 1 Johns. 529; *International Bank* v. *Bowen*, 80 Ill. 541; *Newton* v. *Newton*, L. R. 6 Eq. 135; *Stackhouse* v. *Countess of Jersey*, 1 J. & H. 721.

We negotiated for and bought from Brady, the holder, and paid him for, the genuine notes secured by this trust deed. We therefore then became the owners of them, and they belong to us, and if, by his fraud, he handed us the trust deed and something else as the genuine notes, neither he nor his subsequent assignees can impugn our title.

Our equities are prior in time and equal in merit, and should prevail, under the principle *qui prior in tempore, potior in jure.* Bolton got no "legal title." His right, so far as the

mortgage security is concerned, is an equitable right, only,—a mere equity. *Scott* v. *Magloughlin,* 133 Ill. 35; *Sumner* v. *Waugh,* 56 id. 538; *Stackhouse* v. *Countess of Jersey,* 1 J. & H. 721.

The genuineness of the notes held by plaintiff in error was not impugned by the "expert" evidence. Other evidence sufficiently showing their genuineness was not overcome.

The genuineness of a signature can not, in this State, be proved by comparing it with another signature admitted to be genuine. *Kernin* v. *Hill,* 37 Ill. 209; *Melvin* v. *Hodges,* 71 id. 422.

The evidence shows that if the signature of Gilman was not written by him, it was authorized or adopted by him. *Melvin* v. *Hodges,* 71 Ill. 424.

That Brady, having disposed of the indebtedness of Gilman, and the security, to us, is estopped from impeaching the validity of such sale, or genuineness of the notes which he sold to us as the genuine notes secured by the trust deed, is clear. *Maple* v. *Kussart,* 53 Pa. St. 348.

It is a maxim of common honesty, as well as of law, that a party can not have the price of land sold, and the land itself. Accordingly it has been ruled uniformly, that if one receive the purchase money of land sold he affirms the sale, and he can not claim against it, whether it was void or only voidable. *Maple* v. *Kussart, supra; Needham* v. *Clary,* 62 Ill. 344; Daniel on Neg. Inst. sec. 1358.

On the sale of the notes and security to us there was a warranty of genuineness. *Herrick* v. *Whitney,* 15 Johns. 240; *Smith* v. *McNair,* 19 Kan. 330; Daniel on Neg. Inst. secs. 730, 2358.

Clearly, Brady gave us a good title by estoppel. *Parker* v. *Crittenden,* 37 Conn. 148.

The rule that the estoppel affects and binds privies, applies to estoppels by conduct, and the estoppel in such cases binds assignees and privies of the party whose conduct creates the

estoppel. *Wood* v. *Seely*, 32 N. Y. 105; *Parker* v. *Crittenden*, 37 Conn. 148; *International Bank* v. *Bowen*, 80 Ill. 541; *Kinnear* v. *Mackey*, 85 id. 96.

Mr. N. M. JONES, for the defendants in error:

The so-called notes held by plaintiff in error have been clearly proven to be forgeries.

The expert testimony is clearly admissible. The signature of Gilman to the trust deed can not be questioned, as it is admitted by all the pleadings and is shown by the acknowledgment thereof.

In the third place, the trust deed itself was offered in evidence, by plaintiff. The trust deed being then "properly in evidence," a comparison of handwriting was admissible.

The case of *Kernin* v. *Hill*, 37 Ill. 209, cited in plaintiff's brief, was based entirely on the case of *Jumpertz* v. *People*, 21 Ill. 375, which was distinctly overruled or explained away in *Brobston* v. *Cahill*, 64 Ill. 356.

The case of *Melvin* v. *Hodges*, 71 Ill. 422, is not pertinent. The issue as to comparison of handwritings was not before the court. On page 425 the court, in a *dictum*, simply refers to the *Kernin case*, and states that the question in regard to the genuineness of the signature to the plea referred to, if asked, would have raised a collateral issue, and was irrelevant.

The notes being forgeries, they and the pretended assignment are void, and the ordinary doctrine of equitable assignments does not apply here.

As to what equities the assignee of notes secured by mortgage takes subject to, see *Silverman* v. *Bullock*, 98 Ill. 11; *Olds* v. *Cummings*, 31 id. 188.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The questions arising upon this record, and before us, relate solely to the controversy between the complainants in the original and cross-bills, as to which is entitled to a foreclosure

in his favor. The other portions of the decree are not questioned.

Complainant in the cross-bill introduced the evidence of experts, who, from microscopical and other examinations, testified that the signatures to the notes held by Himrod, complainant in the original bill, were not written by the same person who wrote the signature, "George D. Gilman," to the trust deed given to secure the notes of Gilman, and that the signature to the notes held by the cross-complainant, Bolton, and the name of George D. Gilman indorsed on the back thereof, were written by the same person who wrote the signature of George D. Gilman to the trust deed. It is insisted this evidence was incompetent, first, because there was no direct evidence that Gilman wrote his name to the trust deed; and second, that genuineness, or otherwise, of the signature can not be proved by comparison.

*First*—The trust deed was the foundation of the right of either party to a foreclosure. Each insisted upon its genuineness, and introduced it in evidence. There was nothing upon the face of the instrument to indicate that any person other than the grantor in the trust deed wrote the signature. The deed was properly acknowledged and admitted to record. It will be presumed, in the absence of anything showing the contrary, that the execution of the genuine notes and mortgage was cotemporaneous, and, both being genuine, that the person who signed the one signed the other. They are parts of the same transaction, mutually refer to each other, and there is nothing upon their face to indicate that the signatures were not made at the same time. It is conceded that neither party was able to procure the testimony of Gilman or Brady. Moreover, as said by the Appellate Court: "Courts can not, in this country and this age, fail to take notice of the fact that the majority of men can, and do, as a usual thing, by their own hand, write their names to the documents they execute." It is possible, but not at all probable, that some person other

than Gilman may have written his signature to the deed; but if this was so, the evidence renders it reasonably clear that the same hand wrote the signature to the notes also. The witnesses testify that the signatures to the Bolton notes and mortgage were written by the same hand; that it is a firm, easy hand, not regular, the flourishes quite awkward, but the writer shows ability to control the hand and make smooth, easy lines. They testify that the pen used was an extremely fine and hard one, making an unusually delicate signature, "which individualizes it," and that all were written with the same pen and ink. On the other hand, in the signatures to the Springer notes the letters composing it are often broken, and the down strokes, as well as the up strokes, show great irregularity and indecision on the part of the writer; that some of the letters show patching, especially the initial letter "G," and there is evidence, as it is testified, that the name was traced, or that the writer was following a copy. But in the absence of anything suggesting to the contrary, the presumption arises that the signature was written by the person by whom it is admitted the instrument was executed. It was entirely competent for the complainant in the original bill to have overcome this presumption by evidence tending to show that the deed was not, in fact, signed by George D. Gilman, but by some one for him, if he desired. Wharton on Evidence, sec. 1320.

*Second*—It seems to be well settled in this State that the genuineness of a signature can not be proved by comparing it with an admittedly genuine signature to papers or documents not in evidence in the cause, and which are collateral to the issue, and therefore not admissible in evidence for other purposes. (*Pate* v. *The People*, 3 Gilm. 644; *Jumpertz* v. *The People*, 21 Ill. 408; *Kernin* v. *Hill*, 37 id. 209; *Melvin et al.* v. *Hodges*, 71 id. 425; *Massey* v. *Bank*, 104 id. 327.) In *Brobston* v. *Cahill*, 64 Ill. 356, the distinction between that class of cases and where the comparison is to be made be-

tween the disputed signature and the signature to some paper or instrument admitted or proved to be genuine, and which has been legally admitted in evidence, is clearly drawn, and it was held that the genuineness, or otherwise, of the disputed signature to a paper otherwise admissible in evidence may be proved by comparison with a signature, admitted or proved to be genuine, to a paper which has been admitted in evidence under the issues, and such we understand to be the recognized rule and practice in this State. The chancellor found as a fact, as he was justified from the evidence in doing, that the notes held by Bolton were genuine and those held by Himrod were not.

It is insisted that Brady having transferred to Springer, as true and genuine, the notes held by Himrod, he was estopped to deny that they were such, and that, he being estopped, Bolton, who afterwards purchased the other notes from him, is also estopped. It is said that one can convey no better title than he has, and that Brady being estopped by his representations to Springer, could not transfer the genuine notes released from the effect of the estoppel, and that, therefore, Bolton took them, the sale to him being last in point of time, subject to the estoppel created by the representations of Brady. Bolton being the assignee, before maturity, of the notes which the mortgage was in fact given to secure, the mortgage passed to him, in equity, as an incident of the debt, and he would, upon failure of payment, be entitled to foreclosure of the mortgage for the amount due upon his notes, unless estopped by the conduct of the assignor, not to the mortgagor, but toward a third person. That he would take the mortgage subject to the equitable defenses existing in favor of the mortgagor, is settled in *Olds* v. *Cummings*, 31 Ill. 188, and numerous other cases. The reason there given is, that it is the duty of the purchaser of a mortgage, it not being assignable so as to vest the legal interest, to inquire of the mortgagor if there be any reason why it should not be paid. But we there said:

"He should not be required to inquire of the whole world, to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage, as, for instance, a *cestui que trust*," citing *Murry* v. *Sylburn*, 2 Johns. Ch. 441 ; *Mott* v. *Clark*, 9 Pa. St. 399 ; *Prior* v. *Wood*, 31 id. 142. In the first of these cases it is said by Chancellor Kent : "It is a general and well settled principle that the assignee of a *chose in action* takes it subject to the same equities it was subject to in the hands of the assignor. But this rule is generally understood to mean the equity residing in the original obligor and not an equity residing in some third person against the assignor." The language in *Mott* v. *Clark*, *supra*, that "he (the assignee) takes it (the mortgage) subject to all the equities of the mortgagor, but not to the latent equities of a third person," is quoted with approval.

The question involved came directly before this court in *Silverman* v. *Bullock et al.* 98 Ill. 11, and, upon authority of the cases before mentioned, it was held, "that the assignee of a mortgage takes it subject only to equities existing in favor of the mortgagor, as against the assignor, and not subject to latent equities in favor of third persons in the subject involved in the assignment, of which he had no notice." The reason for the rule, as expressed by Chancellor Kent, is : "The assignee can always go to the debtor and ascertain what claims he may have against the *chose in action*, but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee."

As to the equities existing between the mortgagor and the assignor, the assignee has the means of protection by the exercise of ordinary diligence, while as to latent equities existing in favor of third persons, against the assignor, the most diligent inquiry would not insure such protection. If the rule were otherwise than stated, no one, however diligent, could deal in such securities with safety. Bolton was a purchaser of the notes in good faith and for value, without notice of or

circumstances that would put him upon inquiry in respect to equities in favor of Springer. It seems clear that under the doctrine of these cases he is protected in his purchase against all equities of which he had no notice, other than those existing in favor of the mortgagor, Gilman.

These views are decisive of the correctness of the decree entered. It is not important that Springer was the first assignee of Brady, for it is only where the equities are equal that he whose equity was first obtained has the better right. (Pomeroy's Eq. Jur. sec. 414.) The equities were not here equal. The security passed to Bolton by the indorsement to him of the notes which it was given to secure. To Springer, assignor of Himrod, no interest, equitable or otherwise, in the mortgage, passed by virtue of the assignment of the spurious notes. To the one, by the indorsement, passed the legal title of the notes, and, as an incident thereto, an equitable assignment of the mortgage; to the other, by the indorsement of the spurious notes, nothing passed. Bolton and Springer each acted in perfect good faith. Each purchased, before maturity, notes they supposed to be secured by the mortgage of Gilman to Loeb. The equities of the holder of the Springer notes arise out of the fraudulent representations of the assignor, and exist against him, and not against the mortgagor and maker of the genuine notes. As we have already seen, Bolton became the equitable assignee of the mortgage, and took it subject to all equitable defenses which Gilman, the debtor, had, but not equities of third persons existing against his assignor.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*