Atlanta Guano Co. *v.* Hunt.

λ

ATLANTA GUANO CO. *v.* HUNT.

*(Knoxville.*     November 11, 1897.)

1. BILLS AND NOTES.  *Transfer for value.*

The transfer of notes, whether negotiable or merely assignable, is for value when made as collateral security for a pre-existing debt, upon consideration of the grant of a definite extension of the time for payment of such debt.  *(Post, pp. 90–98.)*

Case cited: Cherry *v.* Frost, 7 Lea, 1.

2. SAME.  *Estoppel in favor of innocent purchaser.*

One to whom negotiable, or assignable, notes are transferred upon a valuable consideration, without indorsement by the payee, to whom they are subsequently retransferred for collection without any earmark to show that he is not the owner, is estopped, as against an innocent purchaser for value from such payee, to claim any interest in the notes. *(Post, pp. 92–99.)*

Case cited: Taylor *v.* Pope, 5 Cold., 413; Savings Institute *v.* Fellows, 6 Cold., 472; Flickey *v.* Loney, 4 Bax., 172; Dinsmore *v.* Boyd, 6 Lea, 701.

---

FROM   WASHINGTON.

---

Appeal  from  Chancery  Court  of  Washington County.    HUGH G. KYLE, Ch.

E. J. BAXTER and ISAAC HARR for Atlanta Guano Company.

KIRKPATRICK, WILLIAMS & BOWMAN and NEWTON HACKER for Hunt.

SNODGRASS, C. J.  The decree of the Court of Chancery Appeals in this case is satisfactory to us, but there is a view expressed in the opinion which needs explanation, lest our concurrence in the result be understood as an approval of all the reasoning of the opinion, which we do not adopt.  So much of the opinion as we refer to will be found in the following language: "We concur entirely in the views set out in the brief and argument of counsel for the defendant, Jonesboro Banking & Trust Company, and, as a most thorough discussion and exposition of this subject, and as thoroughly expressing our views, we adopt that brief, which is hereto attached as part of the opinion of the Court, both on the subject of pledge, which we have just been treating, and upon the subject last mentioned.  And we deem it only necessary to add further that, while we find the holding in Tennessee has been, in our opinion, against the great weight of authority in this country, and somewhat contrary to the best line of public policy, in that it had been held that negotiable paper taken in payment or as security for a pre-existing debt, without more, is not taken in due course of trade, and does not constitute the holder an innocent purchaser without notice, but among the many cases reported in this State, we have found no case which goes to the extent of holding that if there is an express agreement by which, in consideration of the security thus delivered, a definite extension is made, that such will not be a good

consideration and sufficient to make the holder an innocent purchaser for value and in due course of trade. In all of our cases the principle relied on is that there must be a present consideration passing at the time, and it has never been decided that a definite extension would not be a valuable and present consideration passing. In a number of cases it is distinctly intimated that where there was such an express bargain or agreement, that it would in any event. Our Supreme Court has shown an indisposition to extend former rulings on this subject as against the holders of such paper. We are satisfied, at least, the question is open for us to so decide, and we do not hesitate, therefore, to hold that such a definite extension and express agreement would, for the reasons so clearly set forth in the accompanying brief, be a good and valuable consideration passing at the time, and would protect the holder as an innocent purchaser."

The Court of Chancery Appeals, in this connection, was discussing the doctrine of this Court as announced in connection with the transfer of negotiable paper, where the ruling has been that the indorsement of such paper to a holder will not be for value if it was in consideration of a pre-existing debt. It was, however, dealing in the main with the question as to notes payable in property, and which, under our law, are assignable, but not negotiable, and, as to the transfer of which, another rule of law applies. Neither are we to be understood as

assenting to the suggestion that the rule adopted in this State is "contrary to the great weight of authority," or "contrary to the best line of public policy." In numbers the Courts are not very unevenly divided on this question, but, in weight of authority and wisdom of policy, we think the view of this Court is the best, and it has been consistently adhered to. The States holding the one view or the other are substantially enumerated in 4 Am. & Eng. Enc. L. (2d Ed.), 290–293. Thirteen of them, including the great commercial States of New York, Pennsylvania, and Ohio, adopt the same rule as Tennessee.

In the brief which the Court of Chancery Appeals quotes, and which it adopts, there is this language: "The transfer, by due indorsement, of negotiable or assignable paper, before maturity, upon a consideration passing at the time and without notice, vests the assignee or indorsee with the title thereto as against all the world. There is no difference, with reference to the protection thus afforded, between paper which is negotiable by the law merchant and that which is assignable without notice under our statute. The holder of each is fully protected." This, without qualification, is liable to misconstruction.

It was in reference to the following facts that the Court of Chancery Appeals was speaking and quoting: The complainant had sold to the defendant, Hunt, a large quantity of fertilizer and taken his personal obligation to pay therefor. It was contem-

plated that Hunt would sell this on time to farmers, and take notes payable to himself, but which he agreed to hold and deliver to complainant as collateral to secure his own obligation; all of which he did, and thereupon the complainant, guano company, redelivered the notes to Hunt for collection and payment to it. But Hunt had not indorsed the notes to the guano company, nor did it require such indorsement, or put any on them before redelivery to him. When delivered to him they were just as when first taken by him. The notes were payable to him, and indicated, of course, that he was the owner as well as the holder. In this condition he pledged them to the Jonesboro Banking & Trust Company (which had no notice of the fact that Hunt merely held them as agent), by indorsement and delivery, upon consideration of renewal of certain notes of his own which the banking and trust company held at the time, and upon agreement for a definite extension of time of payment of his notes, evidenced by the renewal notes which he at the same time executed in lieu of these pre-existing debts.

Among the notes which were pledged by Hunt to the Jonesboro Banking & Trust Company, it would seem from a reference in the opinion of the Court of Chancery Appeals, there were a few payable in cash, but the great number of them were payable in property, and were not negotiable notes and did not stand upon the same footing, of course, in many respects.

It is true that this Court has not held directly that the transfer of negotiable paper in payment of or as collateral security for a pre-existing debt is a transfer for a valuable consideration in due course of trade, though it was intimated in the case of *Cherry* v. *Frost*, 7 Lea, 1, that where the transfer or pledge as collateral to a pre-existing debt was based upon the consideration of definite extension of time of payment, it would be, and we now hold that it is. So far, therefore, as the notes indorsed and delivered by Hunt to the Jonesboro Banking and Trust Company which were payable in cash and were negotiable, are concerned, the reasoning of the Court of Chancery Appeals is applicable and correct. But, as has been shown, the greater number and amount in value of the notes in this case were not negotiable at all, and the former holding of this Court on that subject is not the controlling question. Such transfers are not governed by the same rule which is applied to the transfer of property.

This rule is fully and accurately stated in the case of *Taylor et al.* v. *Pope*, 5 Cold., 413, where, speaking in reference to property transfer, the Court said : "Mere possession alone does not vest the agent with power to give the purchaser, however innocent, the right of property against the owner. Nor is it enough so to do that the owner put the agent into the possession. Something more must be coupled with such possession to enable the agent to effect a valid sale to a purchaser against the will

Atlanta Guano Co. *v.* Hunt.

or instructions of the owner. That something more exists in cases where the owner has invested his agent in possession with an apparent power to sell, or with the title to the property, or with the customary indicia of title which purport that the title or right of property is in the party having the possession. The obvious justice is that if the owner has put the agent into possession and has by acts of any kind held out the agent as having authority to sell, or has given the agent the means of holding himself out as the owner, in such cases the purchaser who has been thereby misled, and been induced by reason of such apparent authority, or indicia of title, to part with his money for the property without notice of the real fact that the agent had no authority to sell, or that the seller in possession was not the real owner, upon plain principles of natural justice, is entitled to hold the property against the owner. The fault is of the owner that he has furnished the agent an apparent power to sell, or with an apparent title which imports a right to sell. The owner is repelled from recovery upon the principle of what is usually designated an estoppel *in pais.*" *Taylor et al.* v. *Pope*, 5 Cold., 413, citing *Saltus* v. *Everett*, 20 Wend.; *Hoffman* v. *Carow*, 22 Wend.; 10 Ala., 682; 18 *Ib.*, 716; 11 Wend., 80. The principle of the doctrine of this case has been applied to the transfer of choses in action. 6 Cold., 472; 4 Bax., 172; 6 Lea, 701.

In the 5 Coldwell case, as stated, the Court

dealt with the question of property transfer, and it made the right of the purchaser depend not upon the doctrine of negotiability, but upon that of estoppel; and while the doctrine of negotiability of paper would protect the Jonesboro Banking and Trust Company as to such notes as were delivered to it by Hunt which were negotiable, they do not stand on the same footing (though, in respect to these notes, it would be protected for this added reason); they are not the same, and the effect of the holding of the bank of the property notes is not the same, for, as to the latter (the property notes), the bank can only hold them by reason of the estoppel which prevents the real owner from recovering, when he had delivered them to an agent clothed with all the indicia of ownership and power of disposition, which the agent used to another's prejudice.

But as to the defendant's right, so far as the holding of either is concerned against the true owner, it depends upon the fact that he gave value at the time of the transaction. What the bank did was to extend to a definite period the time of payment of pre-existing debts thus secured by the deposit of these notes as collateral, and upon consideration of this deposit, and this was a valuable consideration for such transfer. That the extension by contract of time of payment, to a fixed and definite period, of a pre-existing debt, is a valuable consideration is held in States holding with the Courts of this State that the transfer in consideration of pre-existing debt

Atlanta Guano Co. *v.* Hunt.

is not upon valuable consideration. Am. & Eng.
Enc. L. (2d Ed.), Vol. IV., pp. 295, 296. See, also,
102 U. S., 14–51; Story on Bills of Ex., § 192;
25 Am. Rep., 232; Am. & Eng. Enc. L., Vol.
XVIII., p. 607; Colebrook Col. Sec., § 18; Jones
on Pledges, §§ 113, 114, 117.

To this extent in this State the same rule pre-
vails in respect to transfer of property as of nego-
tiable paper. It has been held by this Court that
if a fraudulent vendee acquire possession of property
and transfer it to another for a valuable considera-
tion, and without notice of the fraud by which it
was obtained, the last vendee will be protected,
but he will not be protected if not a purchaser
for value. *Arendale* v. *Morgan & Co.*, 5 Sneed, 703.
This distinction is taken between the transfer of
property acquired by fraud and acquired by theft:
the thief can convey no title to any purchaser; the
fraudulent vendee can convey a title to an innocent
purchaser—that is, to one who purchased without
notice and gave value at the time. *Ib.* Many of
the States of the Union in which it is held, as it
is in this, that the payment of a pre-existing debt,
or the pledge of property as collateral upon a pre-
existing debt, is not a payment or pledge for value,
have held that it is so, if such pledge of collateral
on a pre-existing debt is made in consideratin of an
agreement for a definite extension of time of pay-
ment of the debt, made when the collateral was de
livered; and, so far as we can find, this proposition

16 P—7

has in none of them been decided otherwise. (See authorities already cited.) We think it entirely sound, and we adopt it both in respect to the transfer of negotiable paper and to the transfer of property or property notes upon such consideration.

Mr. Jones in his work on pledges, Sec. 40, says: "It is a well-settled principle that a delivery back of the possession of the things pledged terminates the pledgee's title, unless such redelivery be for a temporary purpose only, or be to the pledgor in a new character, such as special bailee or agent."

"But if pledged property, which has been redelivered to the pledgor for a special purpose, be sold by him in violation of the agreement under which possession was redelivered to him, the purchaser, having acted in good faith, can maintain his title against the pledgee. Thus, the fact that the pledgor of a horse obtained possession for a special purpose, such as to drive for a few miles to visit a relative, upon the promise to return it in a day or two, and while on the visit traded this horse for another, does not enable the pledgee to recover the horse from the purchaser. The decisions in these cases rest upon the general principle that one who voluntarily allows personalty to pass into the possession of another is bound by the fraudulent acts of the latter, and cannot reclaim the property in the hands of an innocent purchaser for value without notice." Sec. 47.

To be strictly accurate, this last statement should have been that one who voluntarily allows personalty

to pass into the possession of another, giving him at the same time all the indicia of ownership, is bound by the fraudulent acts of the latter. The record, as we have seen, shows these facts in regard to the redelivery to the pledgor, Hunt, of certain property notes, as well as the negotiable notes; they were payable to Hunt, and that they had never been indorsed by him to the guano company, nor was any indorsement put by that company upon the notes when it redelivered them to Hunt to collect for it. That company not only put him in possession of the notes but put him in possession of them while showing upon their face that he was the payee and owner. In such case his transfer to the bank did not depend upon the negotiability of the paper, but was such a transfer of the property as he appeared to be authorized to make, and when made to an innocent purchaser for value, bound his principal upon the doctrine of estoppel.

The result is, therefore, that complainant has no right of recovery against the bank, either on account of negotiable paper or that non-negotiable and merely assignable. The other questions are disposed of by the Court of Chancery Appeals to our satisfaction, and its decree is affirmed.