[Civil No. 1038.   Filed March 27, 1908.]

[95 Pac. 124.]

## JOHN D. RICHARDSON et al., Trustees of the RICHARDSON-ROBERTS DRY GOODS COMPANY, a Corporation, Plaintiffs and Appellants, v. R. H. WREN et al., Defendants and Appellees.

1. BILLS AND NOTES—CONSIDERATION—PRE-EXISTING INDEBTEDNESS—ADDITIONAL—SUFFICIENCY.—Where defendants, a commercial firm, being indebted to plaintiff, executed notes to plaintiff for covering such indebtedness, it being agreed that defendants should be allowed to continue in business and dispose of their stock to pay other creditors, and that plaintiff should furnish them additional goods, such notes were based upon a valuable consideration.

2. MORTGAGES—EQUITABLE—MORTGAGEE A BONA FIDE PURCHASER.—Where plaintiff, a creditor of defendants, a commercial firm, permits them to sell the stock of goods to pay the other creditors, and agrees to furnish them additional stock, in consideration of which they agree to execute to plaintiff a mortgage on property belonging to some of defendants, equity, treating that as done which is agreed to be done, will hold plaintiff as an equitable mortgagee of that property.

3. SAME—SAME—SAME.—Where plaintiff, equitable mortgagee of defendants' property, permits defendants to exchange that property free of encumbrance for the other property, defendants agreeing to execute a mortgage to plaintiff on the second property, plaintiff becomes the equitable mortgagee of the property received in exchange.

**4. Real Property—Exchange—Fraud—Rescission—Bona Fide Purchaser.**—Where property of which plaintiff is the equitable mortgagee is exchanged with plaintiff's consent and defendants' agreement to give plaintiff a mortgage on the property acquired in exchange, and such legal mortgage is given and duly recorded, the party exchanging with defendants cannot rescind the transaction for fraud as against plaintiff, the latter being a purchaser for value in good faith, and the exchange being merely voidable and not void.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge. Reversed and remanded, with instructions.

Action by John D. Richardson and others, as trustees, against R. H. Wren and others. The necessary facts are stated in the opinion.

Edward J. Flannigan, for Appellants.

The following cases hold that a pre-existing indebtedness constitutes one who takes security for the same a purchaser for a valuable consideration with priority over unrecorded conveyances or latent equities of which he was without notice. *Frey* v. *Clifford,* 44 Cal. 342; *Naglee* v. *Lyman,* 14 Cal. 455; *Riley* v. *Martinelli,* 97 Cal. 575, 33 Am. St. Rep. 209, 32 Pac. 580, 21 L. R. A. 33; *Virginia Timber & Lumber Co.* v. *Glenwood Co.,* 5 Cal. App. 256, 90 Pac. 48; *Hayner* v. *Eberhardt,* 37 Kan. 308, 15 Pac. 168; *Gilbert Bros.* v. *Lawrence,* 56 W. Va. 281, 49 S. E. 155; and see *Knowles Loom Co.* v. *Vacher,* 57 N. J. L. 490, 31 Atl. 306, 33 L. R. A. 309, for cases *pro* and *con.* To constitute an equitable mortgage, it is not even necessary the agreement should be in writing; it may be executed by part performance. Jones on Mortgages, 3d ed., sec. 164; *Creech* v. *Long,* 72 S. C. 25, 51 S. E. 614. One who acts on the faith of an agreement to give security is protected. *Coleman* v. *Smith,* 55 Ala. 368; *Watts* v. *Burnett,* 56 Ala. 340; *Miller & Co.* v. *Boykin,* 70 Ala. 477. A mortgage executed by one who stands of record as owner cannot be disputed by the real owner, as against mortgagees for value, acquiring his rights on the good faith of the record title. *Thompson* v. *Whitbeck,* 47 La. Ann. 49, 16 South. 570; *Shepard* v. *Shepard,* 36 Mich. 173; *Valentine* v. *Lunt,* 115 N. Y. 496, 22 N. E. 209; *Flynt* v. *Hubbard,* 57 Miss. 471;

*Flessenden* v. *Taft,* 65 N. H. 39, 17 Atl. 713.   The same rule obtains as to fraud.   *Foster's Heirs* v. *Foster's Admr.,* 11 La. 408; 1 Pomeroy's Equity Jurisprudence, 3d ed., sec. 777.

Thos. D. Bennett, and Geo. H. Neale, for Appellee Manz.

The mortgagee who takes a mortgage to secure a pre-existing debt is not a *bona fide* purchaser or encumbrancer for a valuable consideration so that he can prevail over an existing equity.   *Empire State Trust Co.* v. *Trustees of Fisher,* 67 N. J. Eq. 602, 60 Atl. 940, 3 Ann. Cas. 393, and extensive note at page 395, in which all the cases on the subject are collated.   *People's Savings Bank* v. *Bates,* 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754; *Dickerson* v. *Tillinghast,* 4 Paige, 215, 25 Am. Dec. 528; *Spurlock* v. *Sullivan,* 36 Tex. 511; Willard's Equity Jurisprudence, 256; Story's Equity Jurisprudence, 1503.

NAVE, J.—The appellants in this case are liquidation trustees, under the laws of the state of Missouri, of the Richardson-Roberts Dry Goods Company, a Missouri corporation, and represent the interest of that corporation in the subject matter of this lawsuit.   In this opinion we shall denominate the appellants as the "company."   The appellees Wren have a common interest in the subject matter of this lawsuit, and will be referred to as the "Wrens."   The Wrens were merchants in Missouri in the early part of 1903 and prior thereto. At that time they were heavily indebted.   One of their creditors was the company.   Purposing to wind up their business and liquidate their debts, the Wrens proposed to the company that if the company should permit them to sell off their stock and pay the other creditors first, and would furnish them new stock to freshen up their stock, so that it would sell to advantage, they would give notes for the amount due the company, and give as partial security for the payment thereof a mortgage on a farm in Missouri owned by certain of the Wrens.   The company accepted the proposition, and complied with its part of the agreement.   It was then the expectation of all parties that all creditors, including the company, could be paid from the proceeds of the business by putting the plan into operation.   This expectation was not realized.   The company demanded the execution of the notes and mortgage pursuant to the agreement.   The notes

were executed, but the Wrens represented to the company that there was an opportunity to dispose of the farm to advantage by a trade; and, if the company would permit it to be made without requiring a mortgage to be executed upon the farm as originally agreed, in lieu thereof they would give a mortgage upon the property acquired by the trade. The company agreed to this. The farm was traded for some real estate in Douglas, Arizona. After the consummation of the trade, the company requested the Wrens to execute a mortgage upon the Douglas property. The Wrens then represented to the company that they were about to subdivide the Douglas property into town lots, and sell it by the lot, and that such sales could better be accomplished by permitting the property to remain unmortgaged, but subsequently advised the company that they were purposing to exchange the Douglas property for property in Bisbee, Arizona, and if the company would not insist on having a mortgage on the Douglas property, and would make no objection to the trade, they would give a mortgage upon the Bisbee property as soon as the trade should be effected. To this latter proposition the company assented. The Douglas property was then exchanged for the Bisbee property, the owner of which at the time of the exchange was the appellee Henry Manz, who gave the Wrens a formal conveyance thereof, which was duly placed of record. The company thereafter demanded a mortgage upon the Bisbee property. This the Wrens executed, and it was promptly placed of record. After the execution and recording of this mortgage the appellee Manz brought suit against the Wrens to rescind the exchange of the Bisbee and Douglas property on the ground that the Wrens had defrauded him in the exchange. In this suit he was successful. The conveyance of the Bisbee property by Manz to the Wrens was canceled by judicial decree. The suit now before us was then instituted by the company to foreclose the mortgage obtained by it from the Wrens upon the Bisbee property. The foreclosure was resisted by Manz. The trial court rendered personal judgment against the Wrens, but refused to foreclose the mortgage upon the Bisbee property, apparently upon the ground that the mortgage was given as security for a pre-existing debt, and that, therefore, the mortgagee was not a purchaser for value within the meaning of the statute of frauds. The court found the facts to be in substance as stated above, finding, also, as a fact that the

company acted in good faith in securing the mortgage in question, and was not a party to or cognizant of the fraud perpetrated by the Wrens upon Manz. From this judgment the company has appealed. The sole question before us is whether upon this state of facts the company was entitled to foreclose its mortgage upon the Bisbee property.

Without inquiring into the equitable basis of the proposition that a mortgage given for a pre-existing debt is not based upon a valuable consideration as that expression is here used, and recognizing that the state courts are not unanimous upon this question, it is sufficient to observe that the matter is so determined for this tribunal by the supreme court of the United States. *People's Savings Bank* v. *Bates,* 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754. It is contended by appellant, however, and conceded by the appellee, that if the mortgagee at the time of taking his mortgage to secure a pre-existing debt surrenders some security, agrees to extend the time of payment, or in some other respect increases his risk, this will afford a consideration which will render the mortgagee a purchaser for value. This position is undoubtedly sound. *O'Brien* v. *Fleckenstein,* 180 N. Y. 350, 105 Am. St. Rep. 768, 73 N. E. 30; *Sullivan Savings Institution* v. *Young,* 55 Iowa, 132, 7 N. W. 480; *Farmers' Nat. Bank* v. *James,* 13 Tex. Civ. App. 550, 36 S. W. 288. The major controversy before the trial court, as well as in the argument before us, was waged over the question whether the company had granted the Wrens a further extension of time for the payment of the notes at the time that it was agreed that the mortgage should not be given upon the Douglas property, but should later be given upon the Bisbee property for which the Douglas property would be exchanged. All of the evidence in the case is in the form of stipulations and depositions, nor is there any conflict therein, so that the evidence is as fully before us, and the determination of the ultimate facts may as readily and as appropriately be made by us as by the trial court. With respect to this point the trial court expressly found that there was no agreement for such extension of time. In the view which we take of the case, it is immaterial whether there was such an extension of time, so we shall not review the testimony upon this point. The notes in controversy were given to the company by the Wrens for a pre-existing debt, but they were given at a time and under circumstances (sufficiently stated above) such

that it cannot be gainsaid that they were upon an adequate consideration. If the mortgage upon the Missouri farm had been given contemporaneously with the notes, the mortgagee company would have been under that mortgage a purchaser for value. The promise of a mortgage upon the Missouri property, coupled with the compliance by the company with its part of the agreement in furnishing additional goods to freshen up the stock and in subordinating its claims to those of other creditors, gave the company that right which is familiarly denominated an equitable mortgage. It is a trite maxim that "equity will treat that as done which by agreement is to be done." Applying that maxim, we find vested in the company the full rights of a mortgagee for value of the Missouri farm. By subsequent agreement they waived this mortgage upon the condition that they should receive a mortgage upon property for which the Missouri farm should be exchanged. If a mortgage had actually been executed upon the Missouri farm, and had been surrendered in exchange for a mortgage upon the Douglas property for which the Missouri farm was exchanged, it would be unquestionable that the mortgage upon the Douglas property would be upon a valuable consideration and the company a purchaser for value under that mortgage. Applying again the maxim, it is equally clear that the surrender of the equitable mortgage was an adequate consideration for an equitable mortgage of the Douglas property, and that the company acquired an equitable mortgage of the Douglas property for a valuable consideration. Through an identical process of reasoning it follows that the company acquired by the similar transaction an equitable mortgage of the Bisbee property. This equitable mortgage was merged into a legal mortgage and duly recorded before the suit was brought by Manz to rescind the exchange of his Bisbee property for the Wrens' Douglas property, and before the company was informed or put upon notice of any equitable weakness in the Wrens' title to the Bisbee property. Under this mortgage the company was a purchaser for value of the Bisbee property. The conveyance by Manz to the Wrens of the Bisbee property was not a void conveyance, but a voidable conveyance—voidable by reason of the fraud perpetrated upon Manz in the exchange. The conveyance not being void, Manz's surviving interest existing by reason of the fraud was but an equity. This equity as against the company was lost when the company in good

faith merged its equity—its equitable mortgage—in a legal mortgage upon that property. This is but an application of another trite maxim: "Where equities are equal, the legal title will prevail." It follows that the company is entitled to the foreclosure of its mortgage upon the property in question, and that the trial court in holding to the contrary was in error.

The cause is remanded to the district court, with instruction to that court to enter a decree of foreclosure as prayed.

KENT, C. J., and SLOAN and CAMPBELL, JJ., concur.