Argued March 25; affirmed June 8; rehearing denied
September 14, 1937

# AKIN *v.* SECURITY SAVINGS & TRUST CO. ET AL.

(68 P. (2d) 1047, 71 P. (2d) 321)

*Edward R. Harvey* and *W. C. Bristol*, both of Portland (Manning & Harvey, W. C. Bristol, and Robert G. Smith, all of Portland, on the brief), for appellant.

*Donald K. Grant* and *Robert F. Maguire*, both of Portland (Maguire, Shields & Morrison and Donald K. Grant, all of Portland, on the brief), for respondent.

BELT, J. This suit was commenced on December 5, 1932, to determine who had the superior right and equity in the proceeds of an insurance policy in the sum of $25,000 issued by the New England Mutual Life Insurance Company on the life of William A. Tyler, deceased. From a decree in favor of the plaintiff, the defendant Jansen, as receiver for the Municipal Reserve and Bond Company, alone appeals.

Plaintiff's claim to the proceeds of the policy is based upon an alleged oral assignment of the policy by the insured as collateral security for the payment of a note. Plaintiff avers that she is a bona fide assignee for value and without notice of any equity of the Municipal Reserve and Bond Company in the policy.

The appellant, in reference to the alleged assignment, contends: (1) That it was not made; (2) that, if made, it was without consideration and with knowledge of outstanding superior equities in the appellant; (3) that, if made, it was revoked and terminated; (4) that, if made, it was made under duress and pursuant to an illegal contract not to prosecute a criminal act; (5) that suit is barred by statute of limitations; and (6) that suit cannot be maintained because of a waiver and estoppel.

Appellant claims the proceeds of the policy upon the theory that certain premiums on the policy were paid from funds Tyler wrongfully appropriated from the Municipal Reserve and Bond Company while acting as its president and general manager. Reliance is had by appellant upon the decision of this court (*Jansen v. Tyler et al.,* 151 Or. 268 (47 P. (2d) 969, 49 P. (2d) 372)) relative to the same policy, wherein it was held that a constructive trust had been established and that Jansen, as receiver for the Municipal Reserve and Bond Company, was entitled to 61.54 per cent of the proceeds of the policy. The plaintiff herein, however, was not a party to such suit.

The facts out of which the alleged assignment arose are, briefly stated, as follows: Dr. Mabel Akin and the Tyler family for many years had been on very friendly terms. Frequent visits were exchanged. The plaintiff, in April, 1930, while on a trip to Europe, left instructions with a brokerage house in the city of Portland to deliver certain shares of Columbia River Packers' Association stock to Tyler who was to sell the same for and on her behalf. Tyler, on June 21, 1930, sold the stock but converted the proceeds thereof to his own use and benefit. When Dr. Akin returned from Europe in July, 1930, the conversion of the stock was discovered. The only excuse Tyler offered was that he was in a "desperate way" financially and that he would do all be could to restore her loss. In December, 1930, the plaintiff secured the services of Robert F. Maguire as attorney to effect a settlement with Tyler relative to the conversion of her stock. Various proposals were made by Tyler but none were acceptable. On May 26, 1931, Tyler mailed an unsigned letter written by him to Dr. Akin, enclosing his note for $21,875, the estimated

value of the converted stock. The note was dated June 21, 1930, the date of the conversion. In this letter Tyler proposed: "By July 15, 1931 I have the privilege of returning to you 1250 shares of C. R. P. A. stock, together with an agreement to purchase from you at the rate of $17.50 per share, together with interest at the rate of 6 per cent from June 21, 1930, at which time my note will be returned to me or my note will remain in your hands and *I will support the same with life policies* for an amount to protect you." [Italics ours.] On or about May 28 or 29, 1931, a meeting was held in Maguire's law office in the city of Portland for the purpose of making some kind of a settlement. Dr. Akin, Maguire and Tyler were present. On May 28, 1931, Tyler had written Maguire enclosing "for your inspection" two life insurance policies issued by the New England Mutual Life Insurance Company—one on the life of Geo. W. Davidson and the other covering the life of W. A. Tyler, being policy No. 649853, the one involved in this proceeding.

We think the evidence clearly shows that at this meeting the parties agreed that plaintiff would accept the note for $21,875, together with policy No. 649853 as collateral security for the payment thereof, and that plaintiff would forbear bringing any action against Tyler for wrongfully converting the stock. Maguire rejected the policy on the life of Davidson as having no value as collateral security.

Why did Tyler send these policies to Maguire unless it was for the purpose of offering them as security for payment of the note? That the offer in reference to the policy in question was accepted is clearly established unless the uncontradicted testimony of the plaintiff and the witnesses on her behalf is rejected as unworthy of belief. None of the defendants

offered evidence in the case excepting documentary evidence. Maguire testified on direct examination:

"Q. What was done with regard to this policy on his own life?

"A. As I say, this conversation probably took place, or took the space of at least a half or three-quarters of an hour, and finally I said to him, 'Well, if that is all that can be done we will forget about this matter of any civil suit and we will take your note and take this policy and you will take care of that as soon as you can,' and he said he would.

"Q. Were you taking this in lieu of,—

"A. (interrupting) That was the proposal and that was,—that was the proposal which was accepted by us specifically, that this wiped out all claims which we had for any tort or other wrong.

"Q. Was there any suit thereafter ever brought on the tort?

"A. It was agreed that no suit should be brought; no suit was thereafter brought on the tort.

"Q. What was done with the policies?

"A. Both policies remained in my possession for a few days. We were to go down and take the policy 649853 to Mecklem & Parker's office, who were the local agents of the New England Mutual, and to have a formal change of beneficiary made; as a matter of fact, we would have gone on that particular day except that either he had an engagement or I had an engagement which prevented.

"Q. What was done in addition to delivering the policy to you; what was said at that time?

"A. Well, the policy was ours and the note was ours; we forgot our claim for fraud and he was to proceed as fast as he could and as soon as he could to pay the note."

On cross-examination:

"A. I had in my possession both the note, the policy on Tyler's life, which is in suit here, and the policy on Davidson's life.

"Q. Yes. And you retained that note all the while, did you not?

"A. Oh, yes, but we hadn't accepted it nor accepted the policy until we had this conversation which took place between the 28th of May and the second of June.

\* \* \* \* \* \* \*

"Q. Well, the proposal was to complete this contract, to either go alone or with you and have the beneficiary changed to Mrs. Akin?

"A. No, that is not true; that is not true. So far as we were concerned or he was concerned or Mrs. Tyler was concerned, when we closed that deal on that particular day and we took the note, it was an absolute completed transaction so far as their rights and our rights were concerned.

"Q. Without any written assignment?

"A. Certainly.

"Q. And without his promising or agreeing to ask for a change of beneficiary?

"A. Quite so.

"Q. You mean to say you were relying entirely upon his delivering the policy to you and orally saying?

"A. Yes. Without any qualification whatsoever.

\* \* \* \* \* \* \*

"A. The policy was turned over and was assigned to her and the deal was closed so far as the situation was concerned, but we were to go down and make formal change of beneficiary together at Mecklem & Parkers.

\* \* \* \* \* \* \*

"A. The agreement on his part was performed. We were the owners of the policy and it was our policy. Now, he might cause us trouble and difficulty through neglect, but that is all he could have caused."

Maguire and Tyler did not go to the local office of the insurance company and request a change of beneficiary named in the policy. It seems some in-

tervening engagement prevented their doing so on the day the policy was accepted as collateral security. On June 2, 1931, in Maguire's absence from his office, Tyler telephoned saying he was coming over to get the policy to have the beneficiary changed to the plaintiff. Tyler's secretary, Miss Martin, came soon thereafter and secured the policy. The secretary for Maguire, Mrs. Gohrband, made at the time the following memorandum: ''Mr. Tyler called for these policies June 2, 1931, and said he would return them.'' Maguire was much disturbed when he learned of the transaction and called Tyler on the telephone. Tyler assured him that the policy had been sent to the home office in the East, for the purpose of having the beneficiary changed. In response to numerous inquiries made during the following thirty days, Maguire was told that the delay in changing the beneficiary was due to the fact that loans had been made on the policy.

On July 31, 1931, Tyler committed suicide while an indictment for embezzlement of funds of the Municipal Reserve and Bond Company was pending. Two or three days later Maguire learned of the tragedy and inquired about the policy at the local office of the insurance company. He was informed that Tyler, on June 29, 1931, had requested that the beneficiary be changed from Susan B. Tyler, his wife, to the Security Savings and Trust Company, and that such change had been made at the home office on July 8, 1931. At this juncture it is well to state that Tyler, on June 20, 1931, had created a trust in favor of his wife and child, naming the Security Savings and Trust Company as trustee. The insurance policy was later included in such trust property.

The insurance company paid the amount of the policy, less loans thereon, to the Security Savings and

Trust Company as it was the designated beneficiary at the time of Tyler's death. Maguire, on behalf of his client, made demand, in July, 1931, on the Security Savings and Trust Company for the policy but the trustee refused to surrender it.

In December, 1931, the Municipal Reserve and Bond Company was placed under receivership. On March 29, 1932, Jansen, as receiver, commenced suit claiming the proceeds of the policy involved herein. Dr. Akin, the plaintiff herein, was not made a party thereto. As a result of the trial in the circuit court, the Municipal Reserve and Bond Company was awarded the amount of its funds which Tyler had used to pay premiums on the policy. On appeal, this court rendered its decision on July 30, 1935 (*Jansen v. Tyler,* supra) and the award was increased to 61.54 per cent of the proceeds of the policy. While petition for rehearing was pending, Dr. Akin petitioned to intervene and have this court determine her interests in the policy but such petition was denied. On November 15, 1935, Jansen, as receiver, was paid by the trustee, First National Bank, successor to Security Savings and Trust Company, the amount awarded by this court. Later such amount, by order of court, was impounded to await determination of the instant suit.

The facts out of which this controversy arose are rather involved but the issues are comparatively simple. The vital question is: Was this policy assigned to the plaintiff for value and without notice of the equities of the Municipal Reserve and Bond Company? Was it a bona fide transaction made at a time when the plaintiff had no reason to believe that the funds of the Municipal Reserve and Bond Company had been wrongfully used to pay certain premiums on the policy?

■ We concur in the findings of the trial court that it was a valid assignment. Plaintiff, through her attorney, undoubtedly knew at such time that Tyler was hopelessly insolvent and that he had misappropriated certain funds of the Municipal Reserve and Bond Company, but there is no evidence from which it can reasonably be inferred that she knew, or had reasonable grounds for believing, that the premiums on the policy had been paid with misappropriated funds of the company. There was nothing on the face of the policy to indicate the interest of the appellant. Tyler was in possession of it and had all the indicia of ownership. At least, he had the bare, naked, legal title to the policy notwithstanding the equitable title, as between Tyler and his employer, was vested in the latter. There were no restrictions in the policy against assignment and Tyler had expressly reserved the right to make a change of beneficiaries. Certainly it would have been idle for Dr. Akin to inquire of Tyler as to any outstanding equities. The insurance company had no knowledge nor was it concerned as to the source of the money used to pay premiums. At the time the assignment was made, Municipal Reserve and Bond Company had not declared its interest in the policy. All the evidence tends to show good faith on the part of the plaintiff. No threat of criminal prosecution or duress was involved. Dr. Akin was charitably inclined towards Tyler and had no intention of having him prosecuted for the commission of a crime.

■ Was the policy assigned for value? Appellant urges that, if assigned, it was given as collateral security for a pre-existing indebtedness. Aside from securing a pre-existing indebtedness, if indeed it was such, there was an additional consideration—the forbearance of plaintiff to bring suit against Tyler for

the fraud perpetrated against her in the wrongful conversion of her stock. That such forbearance constitutes value is well established by the authorities: *Hunt v. Hunt,* 67 Or. 178 (132 P. 958, 134 P. 1180), quoting with approval from *O'Brien v. Fleckenstein,* 180 N. Y. 350 (73 N. E. 30, 105 Am. St. Rep. 768), wherein it is said:

"Although the cases are not in harmony upon this question, especially the earlier cases, we are convinced that a pre-existing debt is sufficient to constitute a mortgagee a purchaser for a valuable consideration in such a case as this, if it has a new element of consideration imported into the transaction."

Also see *Streichert v. Higgins,* 121 Or. 303 (254 P. 1023); *Richardson v. Wren,* 11 Ariz. 395 (95 P. 124, 16 L. R. A. (N. S.) 190); *Van Cleve v. Meyer,* 108 N. J. Eq. 421 (155 Atl. 482); *Atlanta Guano Co. v. Hunt,* 100 Tenn. 89 (42 S. W. 482). True, most of the cases above cited involve extension of time of payment which, it was held, constituted a valuable consideration, but we see no difference in principle, so far as valuable consideration is concerned, between an agreement to extend time of payment and one to forbear prosecution of an enforcible claim.

■ The assignment was not revoked or terminated, as contended by appellant, by reason of Tyler's having obtained possession of the policy. It was delivered to him for the special purpose of having the beneficiary changed from Susan B. Tyler to the plaintiff. It was a fraudulent transaction on the part of Tyler when he violated his agreement and named the Security Savings and Trust Company as beneficiary. As stated in 21 R. C. L. 656:

"* * * where the pledged property is returned to the pledgor by the pledgee for a temporary purpose

only, and there is an agreement for redelivery, it is generally held that the pledgee does not lose his lien.''

■ Assuming that a valid assignment was made, it is asserted that any interest thereby acquired by plaintiff is inferior to the equity of appellant in the proceeds of the policy. *Jansen v. Tyler,* supra, is relied upon as an adjudication of ownership by appellant. As before stated, Dr. Akin was not a party to that proceeding and it is difficult to see how her rights could have been adjudicated. That suit was a determination of the equities of the receiver as against the claim of the trustee, the Security Savings and Trust Company. The court was careful to state therein that ''No third innocent party is affected or interested.''

■ The lower court's decision is founded upon the well-established legal proposition that a bona fide assignee for value of a tangible chose in action, having no notice or knowledge of latent equities in a third party, takes it free and clear of such equities. The general principle that an assignee of a chose in action takes subject to all equities which existed against the assignor ordinarily applies to the equities in the original obligor (insurance company) and not those of some third person (Municipal Reserve and Bond Company) against the assignor (Tyler): 2 R. C. L. 631. In Williston on Contracts (Rev. Ed.) Vol. II, § 438, the author in speaking of insurance policies said:

''The ownership of the document is regarded as conferring a kind of legal ownership of the chose in action represented by it. Accordingly a bona fide purchaser of * * * a policy of insurance is preferred to one having an equitable right against the assignor.''

In *Holmes v. Gilman,* 138 N. Y. 369 (34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463), quoted with approval in *Dayton v. Claflin* Co., 19 App. Div. 120 (45 N. Y. S. 1005), the court, in speaking of the tracing of trust funds, said:

"The claim of the plaintiff to recover the moneys arising from the payment of these policies is based upon the principle which allows a cestui que trust to follow trust funds and to appropriate to himself the property into which such funds have been changed, together with the increased value of such property, provided the trust funds can be clearly ascertained, traced and identified, and provided the rights of bona fide purchasers for value without notice do not intervene."

*Vorlander v. Keyes,* 1 F. (2d) 67, involved the right to the proceeds of an insurance policy, the premiums to which had been paid by fiduciary funds. The court upheld the right of the cestui que trust to trace and recover the trust property "unless it has passed into the hands of a bona fide purchaser for value without notice of the misappropriation."

The same principle is recognized in *Crosby v. Tanner,* 40 Iowa 136; *Himrod v. Gilman,* 147 Ill. 293 (35 N. E. 373); *Madison v. Ballou,* 63 S. D. 501 (260 N. W. 831). Also see Perry on Trusts (7th Ed.) § 828, wherein it is stated:

"So long as the fund can be distinctly traced the chancellor will follow it and fasten the purpose of the trust upon it unless the rights of innocent third parties have intervened."

 We see no merit in the contention of appellant that plaintiff should be estopped from asserting claim to the proceeds of the policy or that the suit is barred by the statute of limitations.

The decree of the circuit court is affirmed. Plaintiff is entitled to costs and disbursements.

KELLY, J., not sitting.

———

Petition for rehearing denied September 14, 1937

ON PETITION FOR REHEARING

(71 P. (2d) 321)

BELT, J. Counsel for appellant have directed attention to certain misstatements of fact in the opinion rendered in this case.

In the opinion it was inadvertently stated that Tyler committed suicide on July 31, 1931. The correct date is July 13, 1931. The Municipal Reserve and Bond Company was placed under receivership in December, 1930, and not in December, 1931, as stated in the opinion. It is also conceded that Dr. Akin was not present at the meeting in Maguire's law office on or about May 28 or 29, 1931. The record, however, discloses that she kept in contact with her lawyer and knew what Tyler proposed to do in offering the life insurance policy as security for payment of note.

The writer regrets the above errors as counsel are entitled to a correct statement of facts, but it is believed that none of them have important bearing upon the issues of the case.

█ As stated on original hearing, the vital question in the case is: Was this policy assigned to the plaintiff for value and without notice of the equities of the Municipal Reserve and Bond Company? A further review of the record convinces the court that this question has been answered correctly in favor of the plaintiff.

The insurance policy assigned as security was procured chiefly with funds belonging to the Municipal Reserve and Bond Company. The equitable interest of the bond company in the policy prior to the assignment thereof is good reason to require each party to pay his own costs and disbursements. With this modification of opinion, the petition for rehearing is denied.