### John Rohde v. Friedericka Rohn.

#### Gen. No. 12,547.

1. MORTGAGE—*what constitutes equitable.* The execution and delivery of a mortgage by one not the owner of the land apparently conveyed at the direction of the actual owner, creates an equitable mortgage in favor of the grantee receiving such mortgage upon the representation that it constitutes a first lien upon the land in question.

2. MORTGAGES—*extent of rights of assignees of.* The innocent assignees of mortgages for value get no better title or rights by them than the assignors had.

3. MERGER—*when, between mortgage and equity, takes place.* While it is true that equity will generally keep alive, or consider as kept alive,

for the benefit of proper parties and for the purpose of bringing about justice, a mortgage or other lien security which has been bought by one holding the fee, when a merger is not intended or desired, it will not do so where an intention to avoid a merger would be fraudulent.

4. PRIORITY OF MORTGAGES—*when equitable mortgage takes precedence of statutory one.* An equitable mortgage takes precedence of a statutory mortgage prior in time where the former was received with the understanding that it was a first lien and the latter was taken after a merger had been effected between it and the equity, no superior equities appearing in favor of the statutory mortgage.

5. PRIORITY OF MORTGAGES—*what does not affect.* The institution of a bill to foreclose has no effect to give to the complainant therein a prior right.

6. SUPERIOR EQUITIES—*what does not confer.* The alleged neglect of an equitable mortgagee to demand a mortgage from the owner of the fee rather than to accept one from the clerk of such owner, is counterbalanced as to one having a statutory mortgage who accepts the same upon the faith of the record, notwithstanding it is six years overdue, without a full investigation of the rights to be acquired thereby.

Foreclosure proceeding. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 2, 1906.

**Statement by the Court.** John Rohde, the appellant (joining with him as party complainant one Albert P. Ernst, the successor in trust to Charles C. Schumacher in a trust deed hereinafter described), on July 27, 1903, filed his bill in the Superior Court of Cook County to foreclose a trust deed made by Paul F. C. L. Schmidt and Emma Schmidt, his wife, dated September 22, 1892, conveying to Charles C. Schumacher lot forty (40) in block three (3) in S. J. Walker's Dock Addition to Chicago, to secure a note of $2,500, payable two years after date, with interest at six and a half per cent. per annum, said interest being payable semi-annually and evidenced by four coupon notes. The bill alleged that the note was given originally by Schmidt to Charles C. Schumacher, but was before maturity sold and delivered by Schumacher to the complainant Rohde. That on August 3, 1893, $400 were paid on said note, leaving $2,100 of the principal due. Also that on October 1, 1894, Paul F. C. L. Schmidt and Rohde extended the time of payment

of the balance of said principal note for three years from September 22, 1894, with interest at seven per cent. per annum, payable semi-annually, and evidenced by six interest notes of the date of October 1, 1894; that on September 22, 1897, the time for the payment of said principal note was by an oral agreement between Schmidt and the complainant Rohde extended to September 22, 1898; that May 4, 1898, a warranty deed of that date purporting to convey the said premises from Schmidt and wife to Charles C. Schumacher was recorded; that on September 23, 1898, $100 was paid on the principal sum, leaving $2,000 due, the time for the payment of which was extended by oral agreement between Charles C. Schumacher and John Rohde to September 22, 1900; that on September 22, 1900, one F. M. Dimond, claiming to be the owner of the real estate conveyed by said trust deed and liable for the debt secured thereby, and the said Rohde agreed to extend the time of the payment of the principal note, and Dimond executed and delivered to Rohde, who accepted the same, a writing whereby the time of payment of said note was extended for three years from September 22, 1900, subject to payment of interest at 6 per cent. per annum, payable in semi-annual installments, and evidenced by six coupon notes then made; that five of said coupon notes have been paid in the office of Schumacher; that Charles C. Schumacher died testate on May 3, 1903, leaving his widow, Kittie Schumacher, and four children his only heirs at law, and the said Kittie Schumacher the executrix of his will; that the balance due on the principal note is $2,000; that one interest note was unpaid, and that some taxes had been left unpaid and tax liens allowed to accrue; that Rohde, the complainant, had exercised an option secured to him by the trust deed to declare the principal note due, and that the same was due.

The bill then further alleged that on March 16, 1900, there was recorded in the recorder's office a trust deed dated February 27, 1900, made by Frank Dimond to Charles C. Schumacher, conveying the above described real estate to

secure the payment of Dimond's principal note of $1,600, and certain interest notes; that Friedericka Rohn was the owner and holder of said notes, and that her interest in the premises was, however, subject to the lien of said trust deed belonging to the complainant.

To this bill (to which Paul F. C. L. Schmidt, Emma Schmidt, Frank M. Dimond, Friedericka Rohn, the widow and executrix and the heirs of Charles C. Schumacher, the administrator with the will annexed of his estate, and certain tenants of the premises, were made defendants) Friedericka Rohn filed an answer, neither admitting nor denying most of the allegations of the bill, but admitting that on March 10, 1900, the trust deed of that date referred to in the bill from Frank M. Dimond to Charles C. Schumacher to secure a note of $1,600 was recorded, and that she, Friedericka Rohn, was the owner of said note, and denying that the lien of this trust deed was subject to the lien of Rohde's trust deed. On the contrary, the answer alleged, the lien of the trust deed held by Friedericka Rohn was superior and prior to that of the deed held by complainant Rohde.

The complainant's bill was amended March 24, 1904, and as amended alleged that Schumacher by deed April 21, 1898, from Schmidt became the owner of the premises in question, subject to the encumbrance sought to be now foreclosed by Rohde; that this encumbrance was then and up to some time shortly prior to September, 1900, held by a third person; that Schumacher paid interest on said encumbrance from April, 1898, to May, 1903; that on September 10, 1900, Schumacher having $4,000 in securities belonging to Rohde in his possession, then due and payable, agreed with Rohde to sell, transfer and deliver to Rohde in lieu of a part thereof, namely $2,008.67, the note of Paul F. C. L. Schmidt dated September 22, 1892, originally for $2,500, but reduced to $2,000 by payments, and a trust deed on the before described real estate securing the same, and in consideration of this $2,008.67 of Rohde's did so transfer and deliver to Rohde the said note and trust deed

on October 20, 1900, and then and there stated that said trust deed was a valid and first lien on the real estate described therein. It repeated the allegations of the original bill as to Schumacher's death and heirs, and averred that his estate was insolvent. It then alleged generally that the other defendants, who were the same as the defendants to the original bill, claimed interest in the property described, but that any interest they had was subject to the lien of complainant's claim.

Friedericka Rohn filed an answer to this amended bill to the same general purport as that filed by her to the original bill, and also filed a cross-bill alleging that she received her $1,600 note and the trust deed securing the same in the distribution of the estate of Charles Rohn from the executor of said estate, Rudolph Rohn; that Rudolph Rohn as such executor, having on September 10, 1900, $1,600 of the funds of said estate to invest, asked Schumacher for a first mortgage; that Schumacher, who was then the owner of the real estate in question, unknown to Rohn, produced a note dated February 27, 1900, for $1,600, due three years after date, with interest at six per cent., evidenced by coupon notes signed by Frank M. Dimond, payable to the order of the maker and by him indorsed; and also a trust deed from Dimond to Charles C. Schumacher, trustee, dated February 27, 1900, and recorded March 16,1900, conveying the property in question to secure the said note, and stated that said trust deed was a first lien on said real estate and secured said principal note and coupons; that Rudolph Rohn was discharged as executor on August 25, 1902; that on February 27, 1903, Schumacher told her (Friedericka Rohn) that Dimond wanted an extension of the note for three years, and again stated that said trust deed and note made a first lien on the property described in the trust deed; that he then delivered to her six new coupon interest notes signed by Dimond, and a memorandum agreement concerning the extension of the principal note for three years from February 27, 1903, signed by said Dimond; that both

she and Rudolph Rohn were unaware that Schumacher was the owner of the property involved until after the death of said Schumacher in May, 1903; that the interest on the $1,600 note from August 27, 1903, was unpaid, and that she had declared the principal due according to the right given her by the trust deed; that the ownership of the said note and trust deed gave her a first lien on the property involved superior to all of the other defendants; that Rohde claimed a first lien on the premises by virtue of his $2,000 note and trust deed described in his bill, but that they had in fact been paid and discharged.

The cross-bill then prayed that the Rohde note and trust deed be decreed to be a cloud on the title and the Rohn note and trust deed foreclosed.

To this cross-bill Rohde answered, disclaiming any knowledge of the transactions between Rudolph Rohn or Friedericka Rohn and Schumacher, denying that the Rohn note and trust deed constituted a first lien on the real estate involved, and alleging that the Rohde note and trust deed did constitute such a lien.

Proper replications having been filed where needed, and the parties to the bill and cross-bill having submitted their rights to the court or been defaulted, a reference of the cause to a master in chancery was ordered to take evidence and report his conclusions of fact and law to the court.

The evidence taken before the master was not contradictory. It developed the facts to be that Schmidt and wife, then owning the fee of the premises, made the Rohde note as charged September 22, 1892, payable in two years; that the note was reduced to $2,000, and when due September 22, 1894, extended for three years; that October 9, 1894, Schumacher, who was in the real estate and loan business, sold it to one McCarthy; that April 21, 1898, Schmidt, who had defaulted in payment of principal and interest, made a warranty deed to Schumacher of the premises covered by the trust deed, receiving therefor, subject to the $2,000 encumbrance, $150; that this deed was recorded May 4, 1898; that Schumacher then paid taxes on the land and on August

29, 1898, paid a judgment of record against Schmidt which was a lien on said land, and that he held the legal record title to the land until his death May 3, 1903; that McCarthy held the Rohde note and trust deed until February 20, 1900; that the said note was past due and unpaid in his hands from September 22, 1897, to February 20, 1900; that on February 20, 1900, Schumacher paid to McCarthy $2,000 for the same and received it and the trust deed securing the same; that February 27, 1900, one F. M. Dimond was employed as a clerk in the office of Schumacher; that he never held the legal title of record of the land, but was a stranger to the title; that nevertheless on or about the date of February 27, 1900, by the procurement of Schumacher, Dimond executed a note of $1,600 (the Rohn note) payable to the order of himself and indorsed by himself, and payable three years from date, and also a trust deed on the premises in question to Schumacher as trustee to secure said note, and that these papers were presumably in Schumacher's possession thereafter until transferred by him to Rudolph Rohn. This trust deed was recorded March 16, 1900. That September 10, 1900, Schumacher sold and Rudolph Rohn purchased, substantially as set out in the amended cross-bill of Friedericka Rohn, the $1,600 note and trust deed of February 27, 1900, and Schumacher made the representations to Rohn which are in that cross-bill alleged; that this note and trust deed afterward came into Friedericka Rohn's possession, as in that cross-bill set out; that Schumacher paid all the interest on said principal note, and on February 27, 1903, at the maturity of the principal note procured to be signed by Dimond and delivered to Friedericka Rohn, a so-called "extension agreement" for three years, and six coupon interest notes signed by Dimond for semi-annual interest on said note; that Schumacher, on paying the $2,000 to McCarthy on February 20, 1900, and receiving the Schmidt note and trust deed, kept the same uncancelled and unreleased until he delivered them to Rohde October 18, 1900; that on said date of October 18, 1900, Schumacher had over $4,000 of Rohde's in his hands; that

the delivery of the note and trust deed in question to Rohde
was with representations by Schumacher that it was a first
lien (this position is controverted by the appellee, but this
court thinks it sufficiently established by the evidence);
that with the said papers Schumacher delivered to Rohde
an "extension agreement" signed "Frank M. Dimond, As-
signee of Paul F. C. L. Schmidt," dated September 22, 1900,
and purporting to be a memorandum of extension of the
"balance of $2,000" on the Schmidt note from September
22, 1900, to September 22, 1903; that the delivery of this
"Rohde" note to Rohde was by way of settlement by
Schumacher for a portion of the money in Schumacher's
hands belonging to Rohde; that on June 26, 1901, Schu-
macher entered in his books a memorandum that he had on
October 18, 1900, turned over to Rohde this note, designat-
ing it, however, as the "Dimond note," and on said date of
June 26, 1901, charged $2,008.67 for it against Rohde,
thereby balancing Rohde's account; that Schumacher paid
the interest on said "Rohde" note up to March 22, 1903,
since which time interest has not been paid; that by reason
of the non-payment of taxes Rohde had the right, which he
had exercised, of declaring the principal due.

The master's report was filed in court May 15, 1905, the
purport of its findings being that the Rohde note and trust
deed constituted a lien on the premises in question superior
to that made by the Rohn note and trust deed, and that a
decree of foreclosure in the usual form of the Rohde trust
deed should be entered in accordance with the prayer of
Rohde's amended bill.

Exceptions to this report were filed and argued before the
chancellor in the Superior Court, based on the alleged pri-
ority of the lien of the Rohn notes.  The chancellor sus-
tained the same, and by his decree found that the cross-
complainant, Rohn, had a first equitable lien on the real
estate in question for $1,833.38, and the original complain-
ant, Rohde, an equitable lien, subject to the Rohn lien, for
$2,411.18, and ordered a foreclosure sale and the payment
of the Rohn note from the proceeds first after the costs,

Rohde v. Rohn.

etc., the balance, if any, to be reported to the court for further disposition. From this decree Rohde has appealed to this court, and has assigned as error the preference given by the chancellor to the "Rohn" over the "Rohde" lien.

JOHN STELK, for appellant; JAMES S. MURRAY, of counsel.

GEORGE F. BARRETT, for appellee; CHARLES V. BARRETT, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a question of the priority of equitable mortgages. It is conceded by both parties that the note and trust deed belonging to the cross-complainant, Friedericka Rohn, constitute such an equitable mortgage. Dimond, who executed them, although a stranger to the title, executed them under the instructions and by the procurement of Schumacher (who was the holder of the legal title), and then gave them to Schumacher, who, with the representation that they made a first lien on the premises in question, sold them for value to the cross-complainant. Nothing could be a plainer case of an equitable mortgage than this. The insufficiency of the trust deed as a common law or statutory mortgage of Schumacher's then existing interest in the land is not more apparent than is the intention necessarily from the transaction inferred and imputed to the parties that it was to operate as a charge on the property.

It seems to be admitted in terms in appellant's argument that the note and trust deed belonging to the appellant, John Rohde, also constitute an equitable mortgage; but the force of his argument, after all, lies in the position that they do not make an equitable mortgage merely, but a common law or statutory one. This was the finding of the master. "The acquisition of said note and trust deed on the 20th day of February, A. D. 1900", he says, (Finding 15) "did not constitute a merger of the said note and trust deed into the fee simple title of said premises owned by said Charles C. Schumacher; that the said Charles C. Schu-

macher gave no intention of merging said encumbrance into
said fee simple title at that or at any other time; that there
was no merger; that said Schumacher did not cancel said
trust deed, nor did he release the lien of the same, but that
it was his intention to negotiate the same, which he subse-
quently did." And again (Finding 22), "Rohde had a right
to rely upon the ownership of said real estate as the same
appeared of record, and acquired said note from Schu-
macher for value and without notice of any equities."

Exceptions to these findings were sustained by the chan-
cellor, and we think the chancellor was right. If, how-
ever, the findings of the master, as above given, should be
considered correct, the mortgage held by Rohde would be
regular and statutory, and being so would be entitled to
what the master gave it—a priority over the purely equi-
table mortgage belonging to the cross-complainant, Rohn.

The difficulty with the theory held by the master, that
because Schumacher gave no signs of an intention to merge
the Schmidt encumbrance into the fee when he bought it,
or at any other time, there was no merger, is that the prem-
ise cannot be considered correct under the circumstances
of this case.

It is true that equity will generally keep alive, or con-
sider as kept alive, for the benefit of proper parties and
for the purpose of bringing about justice, a mortgage or
other lien security which has been bought by one holding
the fee, when a merger is not intended or desired. In this
case, however, whatever want of indication by Schumacher
that he intended to merge the security in the fee there
may have been February 20, 1900, when he paid to the
holder of the Schmidt note and mortgage the amount due
on them and took them into his possession, there was no
such want of indication on February 27, 1900, when he
took from his clerk another note and a trust deed securing
that note on the same property and held them (as he evi-
dently did) as a part of his stock in trade as a mortgage
broker and dealer. Still less was there any want of such
indication when, on September 10, 1900, he sold to Rudolph

Rohn the note and trust deed of this clerk and assured the buyer that they made a first lien.

To suppose that, as the master found, Schumacher had no intention at any time of merging the Schmidt encumbrance into the fee simple title, but intended further to negotiate the same, is to credit Schumacher from February 20, 1900, with a fraudulent and criminal intent to cheat one of two innocent parties, and to give to that wicked intent (only to be inferred from his subsequent actions) the same effect as equity, to prevent injustice, will give to an honest and beneficial one. Such a presumption cannot be indulged in this case. There cannot be presumed to have been a fraudulent intent on Schumacher's part until it is impossible to suppose his action honest, and this time seems to us to have been on October 18, 1900, when, after having already made for value an equitable mortgage to one man, representing it to be a first lien, he re-negotiated to a second party with similar representations an encumbrance which he had paid and which was merged, but which had not been cancelled or released. It is fairly presumable that he had given, or supposed he had given, to Dimond a deed of the legal title before he took from Dimond the $1,600 note and trust deed. But even if the want of connection of Dimond with the legal title was due to something other than oversight, Schumacher's actions estopped him, or anybody who did not secure from him greater rights than he himself possessed, from claiming that Dimond's trust deed did not encumber the property.

Had there been no merger, the master's finding would have been correct, and the "Rohde" mortgage, prior in point of date and record, would have taken precedence of the Rohn mortgage. A merger of the Schmidt mortgage and the fee did, however, in our opinion, actually take place before the "Rohn" mortgage was sold by Schumacher. As we have said before, this is conceded in terms by the appellant in his argument, although the master based his findings on the ground that no such merger occurred.

Appellant insists, however, that even conceding that this

"Schmidt" mortgage was merged, and that therefore the question is not between a legal or statutory mortgage on the one hand and an equitable mortgage on the other, but between two equitable mortgages, yet the "Rohde" equitable mortgage has priority over the Rohn mortgage for various reasons.

First, as we understand the argument, it is said that the reliance of Rohde on the note and record title was justified, rather than Rohn's reliance on his mortgage, which could not be connected with the record title, because if one looked no further in the claim of title on the record than to the making of the Schmidt trust deed, the record lien of the mortgage would appear regular. Therefore, even though the mortgage had merged with the fee in Schumacher's hands, its efficacy revived in Rohde's hands as against the mortgage, the connection of which with the title could not be traced in the records.

But this is equivalent to saying that the assignee or vendee of Schumacher obtained a better title than Schumacher had to the enforcement of this mortgage. Schumacher certainly could not, against the Rohn mortgage, have enforced this Schmidt mortgage, notwithstanding its ostensible greater connection with the title. By the law of Illinois mortgages (by deeds of trust or otherwise) are non-negotiable, and the assignee of them for value and innocently gets no better title or rights in them or by them primarily than the assignor himself had. Olds v. Cummings, 31 Ill. 188; Himrod v. Gilman, 147 Ill. 293; Buehler v. McCormick, 169 Ill. 69; Bouton v. Cameron, 205 Ill. 50.

Priority in time for the equitable mortgage made to Rohn, made for it *prima facie* priority of claim. Counsel for appellant lean heavily on the statement of Vice-Chancellor Sir Richard Kindersley in Rice v. Rice, 2 Drewry, 73, that priority of time in a contest between persons having only equitable interests is the ground of preference last resorted to. Undoubtedly this is in a sense true, and the section of Pomeroy's Equity Jurisprudence (414) which

quotes Rice v. Rice (*supra*) is cited in Himrod v. Tillman (*supra*) to sustain it. Vice-Chancellor Kindersley's language is accounted by Mr. Pomeroy as too strong (Pomeroy's Eq. Juris., sec. 707), but allowing to it full force, it does not, as it seems to us, militate against the position of the appellee in this cause. For the gist of it is only what is conceded to be the law of this state, laid down expressly for example in Himrod v. Tillman (*supra*). "It is only where the equities are equal that he whose equity was first obtained has the better right." This means, as applied to a case like the present, of two equitable liens, that circumstances are possible, where the holder of the first of these liens has estopped himself by some action or neglect from claiming the natural result of his priority. Such a case was Rice v. Rice (*supra*). In such a case the equities of the two parties are weighed.

In the case at bar it is argued that such a neglect occurred in the failure of Rohn to call for a trust deed mortgage from Schumacher instead of Dimond, and for a release from Schumacher of the Schmidt trust deed and for the cancellation of the Schmidt note.

If it could be said that this would in any event have constituted a sufficient default in due care to have postponed the rights of the equitable mortgagee to those of a subsequent lien holder, we think that in the balancing of equities it is more than outweighed by the similar failure of Rohde sufficiently to investigate his purchase. In the purchase he dealt with the coupon notes and so-called extension of F. M. Dimond, who styled himself in the latter document "Assignee of Paul F. C. L. Schmidt." He had reason, therefore, to know that Dimond was claiming to own the property. The question is not one of the duty of a purchaser of a legal title to search the record beyond a certain point—it is one of the balancing of equities to see whether the subsequent purchaser of an equitable lien is so much the more innocent victim of a fraudulent vendor as to overcome the *prima facie* presumption of pri-

ority that precedence in time gives to a preceding purchaser of a similar encumbrance.

The language of Crawford v. C., B. & Q. R. R. Co., 112 Ill. 314–319, "Anything which apprises a purchaser of land or an incumbrancer that a particular person claims the property or an interest in it, makes it the duty of the former to pursue that notice to its source, and failing to do so he would have been chargeable with all he would have learned had he pursued the matter to the full extent to which it led," was therefore used in a case where its doctrine was not so plainly applicable as it is in the one at bar. Had Rohde pursued the "claim" of Dimond, of which he was "apprised," he would have discovered that Dimond had already pledged it, and that whatever it amounted to, it was in the hands of an innocent purchaser for value. Moreover, Rohde should, it seems to us, have been the more careful to make such an investigation, because he was receiving an obligation on its face six years overdue. We do not think that Rohde can claim a superior equity outweighing Rohn's priority in time from any of the circumstances of the two sales or from any of the respective omissions or defaults of the two purchasers.

Nor do we think that the prior filing of Rohde's bill to foreclose gave the Rohde lien precedence. It was not in this case, as it was in the cases cited by appellant's counsel, the filing of the bills which gave or made the equitable liens. The liens respectively existed from the payments of money to Schumacher (in cash or by credit) by the respective purchasers. The bills were but means to enforce the liens, of which the priority cannot be determined by the order of the filing of the bills.

The authorities cited in appellant's argument to the effect that rights of action for fraud cannot be assigned, are of course sound in their doctrine, but they are not applicable, as we view the present case, to any of the issues involved in it.

The case involves in any event an unfortunate issue for one of two innocent victims of a fraudulent transaction.

We think that the decree of the Superior Court was correct in determining the incidence of this loss, and it is affirmed.

*Affirmed.*